## HAPGOOD v. BERRY et al.

(Circuit Court of Appeals, Eighth Circuit. November 4, 1907.)

### No. 2,577.

1. EQUITY—JURISDICTION—WAIVER OF OBJECTION.

The objection that equity is without jurisdiction because the complainant has an adequate remedy at law should be taken at the earliest opportunity; and, if the subject-matter belongs to the class over which a court of equity has jurisdiction, it is too late to make such objection after the defendant has answered, and there has been a hearing before a master.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 174.]

2. PRINCIPAL AND AGENT—ACCOUNTING—JURISDICTION.

A suit to recover on a contract by which complainant was to render services to defendant in buying, renting, and selling lands, and was to receive as part compensation a share of the profits made, in which it was necessary to state an account between the parties covering the transactions during several years, was properly cognizable by a court of equity.

3. APPEAL—REVIEW—SUBMISSION OF ISSUES TO JURY—WEIGHT OF FINDING.

A special finding of a jury on an issue of fact submitted in a suit in equity must be taken by an appellate court as presumptively correct; and, so far as it depends on conflicting testimony or upon the credibility of witnesses or so far as there is any testimony consistent with the finding, is conclusive.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3928–3943.]

4. SAME—REFERENCE WITHOUT CONSENT—WEIGHT OF FINDINGS.

A finding of fact by a master on a reference made without consent does not have the weight of a special verdict of a jury, or of a finding where

the reference is by consent of parties, but is advisory only, and the question must be determined on the evidence where exceptions are taken both in the trial court and the appellate court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3996–4012.]

5. EQUITY—DECREE—NATURE AND EXTENT OF RELIEF.

In a suit for a settlement between the parties to a contract, by which complainant was to buy and sell lands for defendant, and to receive half of the net profits made thereon, where the contract has been terminated, leaving lands so bought undisposed of, it is competent for the court to direct such lands to be sold by the master, and the profits divided.

Appeal from the Circuit Court of the United States for the District of Kansas.

T. F. Garver (J. B. Larimer, on the brief), for appellant.

John S. Dean (Keller & Dean and G. W. Hurd, on the brief), for appellee Berry.

N. H. Loomis (R. W. Blair and H. A. Scandrett, on the brief), for purchasers at sale.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This suit was commenced originally in the state court by John J. Berry, appellee (hereinafter referred to as complainant), against Charles H. Hapgood, appellant (hereinafter referred to as defendant). It appears from the bill that the complainant and defendant had been associated for a number of years prior to 1899 in land transactions, that these transactions were carried on under different contracts and agreements between the parties, made and entered into from time to time. The particular contract upon which this suit is based is as follows:

"Memorandum of Agreement.

"Made at Tampa, Kansas, Oct. 14th, 1899, between Charles H. Hapgood and J. J. Berry, as follows:

"(1) That J. J. Berry is to devote his time, under the direction of said Charles H. Hapgood in buying, selling and trading real estate. And to the renting and collecting of rents from real estate, now owned by said Hapgood or which he may hereafter acquire.

"(2) That said Hapgood is to pay said Berry for services, to be so rendered an annual salary of Four Hundred ($400) dollars during the continuance of this agreement. And ½ of all profits.

"(3) That if said Berry dies during the continuance of this agreement said Hapgood is to pay the heirs of said Berry a pro rata of the annual salary up to the time of said Berry's death.

"(4) That this agreement shall remain in force until said Berry's death or until he gives at least six (6) months' notice to said Hapgood of his wish to terminate the same at the end of the current year or until said Hapgood, previous to his death, or the owner or owners of said Hapgood's real estate, after his death, give at least six months' notice to said Berry of his, or their wish to terminate the same at the end of the current year.

"Charles H. Hapgood.
"J. J. Berry."

In his prayer for relief complainant prayed for an accounting for certain rents and profits, and for one-half of all profits derived from the sale of lands under the contract above set out, amounting in the ag-

gregate, it is claimed by the bill, to the sum of $49,750. He also prayed for interest upon that amount at the rate of 6 per cent. per annum from the 1st day of August, 1902. The statutes of Kansas provide that:

"The distinction between actions at law and suits in equity and the form of all such actions and suits heretofore existing are abolished and in their place there shall be hereafter but one form of action, which shall be called a civil action."

The defendant, Hapgood, removed the case from the state court into the Circuit Court of the United States for the district of Kansas, First Division, upon the ground that it was a controversy between citizens of different states, alleging in his petition that he was a citizen of the state of Illinois and that Berry, the complainant, was a citizen of Kansas. After the case was transferred to the Circuit Court, the defendant moved that the complainant be required to recast his pleadings to conform to the rules and practice of the Circuit Court. This motion was sustained, and within the time allowed by the court for that purpose the bill in this suit was filed. To the bill as originally filed, the defendant demurred, on the ground that it appeared by the bill that it contained several distinct matters and causes, some of which were cognizable by a court of equity and others were actions at law. We are unable to find any direct ruling made by the court upon this demurrer. The demurrer was filed May 17, 1904, and on the 14th of June the following order was entered:

"And now, to wit, on this 14th day of June, 1904, by consent of both parties at the time present in court, it is ordered that the bill of complaint herein be amended by striking out the lines 5 to 31, inclusive, on page 10, and that the defendant have thirty days within which to plead to said bill of complaint. It is further ordered by consent of said parties that this case be consolidated with No. 8169, now pending in this court, for the purpose of trial."

The record further shows that on the 16th of July, 1904, defendant filed his answer to the bill, admitting the making of the contract in suit, except the words, "and ½ of all profits"; it being alleged in the third paragraph of the answer that these words were fraudulently inserted by the complainant after the contract had been executed, and without defendant's consent. Thereafter, on the 8th of December, the cause came on for hearing before the court and a jury, upon the issue raised by the defendant in the third paragraph of his answer. The question to be determined by the jury was as follows:

"Were the words 'and ½ of all profits' written in the Berry copy of the disputed contract before such contract was signed and with the consent of Hapgood as a part of the agreement?"

This question the jury, by special verdict, answered in the affirmative, and the finding of the jury was subsequently adopted by the court. By order of the court the transcript of the evidence introduced in the trial of the special question submitted to the jury was filed and made a part of the record, and is found in the printed record filed in this court on the first appeal.

On the 11th of March, 1905, an order was entered reciting the appearance of the parties by their attorneys, and that, upon application

made by the complainant, W. P. Hackney was appointed special master to hear the evidence and report his findings of fact and conclusions of law upon the issues raised in the case, and further, that the master return into court the evidence upon which his findings of fact and conclusions of law were based. The master's findings, dated June 23, 1905, were in favor of the complainant, finding, among other things, that the plaintiff was entitled to a judgment in the sum of $24,082.50, with interest from July 31, 1902, at the rate of 6 per cent. per annum. The master filed with his report a copy of all evidence taken before him. To this report the defendant filed 30 exceptions, some of which were sustained by the court and others overruled. On the 17th of October, 1905, the court entered a decree (after excluding from its consideration the findings made by the master to which the exceptions were sustained), adopting the master's report as its findings and conclusions, and ordered that an accounting be had between the parties "for the purpose of determining what if any profits there are in said lands," directing the master to credit the defendant with the purchase price paid for the lands purchased by the complainant on account of the defendant; also all expenses paid by him incident to such purchase price or the improvement of the properties, and also all taxes paid by him on such land, together with interest on all such sums at the legal rate from the date of payment to a day to be fixed by the master, charging the defendant with the amount received by him on all such lands sold, all rents and profits by him received, together with interest thereon at the legal rate from the date received to the day certain. The decree further directed the master to sell all of the lands remaining unsold to the highest bidder, and to report his proceedings to the court. The plaintiff filed a petition for rehearing, which was overruled, and the case was appealed to this court. The appeal was dismissed at the May, 1906, term of this court, on the ground that the decree appealed from was not a final decree within the meaning of the act of Congress providing for appeals from the judgments and decrees of the Circuit Court. Upon the case being returned to the Circuit Court, the decree of October 17, 1905, was amended by adding thereto the following:

"There is hereby expressly reserved to said court the right to hereafter review and reconsider any and all matters heretofore done or decided in this cause, and upon the final report of the master, and the final decree of the court, after the filing of the master's final report, there is hereby reserved to the defendant the right to except to said decree of October 17, 1905, as well as to such final decree hereafter to be entered herein, the same as if such exceptions were taken at the time said decree was entered; and the decree heretofore and on October 17, 1905, entered, is intended to be, and is, an interlocutory decree only, and not a final decree of said court herein, and is subject to future modifications or changes by the court."

And thereafter the master proceeded to advertise and sell the lands as the decree directed to the highest bidder, realizing therefor in cash the sum of $71,195, less $15,000 evidenced by a mortgage upon some of the land and specified in the master's report. February 6, 1907, the parties entered into the following stipulation:

"For the purpose of avoiding the expense of any further accounting by the special master, pursuant to the order of the court, filed in the above-entitled cause on the 17th day of October, 1905, it is hereby stipulated by and be-

tween the parties to the above-entitled cause that crediting said defendant with the purchase price paid for the lands purchased by said defendant, and in controversy in this action and all expenses by him paid incident to such purchase and the improvement of the properties purchased, and also all taxes by him paid on such lands, together with interest on all said sums from the date of payment, at the legal rate, to the 1st day of January, A. D. 1907, and charging said defendant with the amount received by him for all such lands sold and all rents and profits by him received, together with interest thereon at the rate of 6 per cent. per annum from the date received to the 1st day of January, 1907, said defendant had on the 1st day of January, 1907, the sum of $34,788.68 invested in said lands, less the sum of $15,000, the same being the amount of a certain mortgage given by said defendant on a part of the lands so purchased as hereinafter set forth. And it is further stipulated and agreed that said sum of $34,788.68, less said sum of $15,000, is the amount which said defendant is entitled to receive from the proceeds of the sale of said lands by the master before any distribution shall be made between said parties from the moneys so obtained. And it is further stipulated and agreed that the original costs of said lands was $47,100; that the receipts including interest exceed the expenditures including interest since the purchase of said lands in the sum of $3,653.32: that from the sale of said lands said defendant has received the sum of $8,658. It is further stipulated and agreed that since the purchase of said lands said defendant has mortgaged the following described premises included in the lands so purchased, situated in Chase county, state of Kansas, to wit: All of sections numbered five (5); seven (7); eight (8); seventeen (17); eighteen (18); nineteen (19); and the north half and the southwest quarter of section numbered six (6) all in township eighteen (18) south of range six (6) east of the sixth principal meridian for the sum of $15,000, which still remains a lien upon said lands and subject to which said lands were sold by the special master. It is further stipulated and agreed that the cost of section eleven (11) and the northwest quarter of section fourteen (14) in township twenty (20 range five (5) east in Marion county, Kan., was $4,000, and that the receipts and expenditures including interest on said lands equal each other. This stipulation is made reserving and without waiving any and all objections and exceptions heretofore made to the proceedings and decrees entered in this case."

And on the same day the defendant filed exceptions to the master's report of the sale. Upon these exceptions the court heard evidence, and on the 12th of February, 1907, entered the decree here complained of, confirming the sale made by the master and directing him to execute deeds to the purchasers.

While numerous errors are assigned in the record, it is conceded by counsel for the defendant that only the following questions are involved in this appeal:

"(1) Are the words, 'and ½ of all the profits,' any part of the contract of October 14, 1899?

"(2) Can a suit for an accounting be maintained upon the unperformed contract for the personal service of appellee?

"(3) Did appellee forfeit all right to compensation by reason of his misconduct and unfaithfulness in the service of appellant?

"(4) Can profits under such a contract be determined by a forced sale of appellant's lands without his consent?

"(5) Were section 11 and the N. W. ¼ of section 14, township, 20, range 5, Marion county, any part of the lands purchased under the 1899 contract?

"(6) Did the trial court err in overruling appellant's motion to set aside, and in confirming, the sale of real estate as reported by the special master?

"(7) Was the appellee entitled to a decree, under the facts as shown by the record?"

We will notice the second question first, because by it the defendant seeks to question the jurisdiction of a court of equity to afford the relief

granted by this decree, upon the ground that the complainant had a complete and adequate remedy at law. In the determination of this question, it will be necessary to briefly notice the history of the litigation. The suit was brought by complainant in the state court, was removed to the federal court by the defendant, and there, upon his motion, the complainant was required to recast his pleadings. He filed a bill in equity, to which the defendant answered. The case was sent to a master to take the testimony, make findings of fact and state his conclusions of law thereon, and to report the evidence, together with his findings, to the court. This, it is true, as contended by the defendant and as the record shows, was done without his express consent. Although present in court when the order was entered, he made no objection upon the ground now sought to be raised or upon any other ground, and the first intimation of any objection upon his part to the proceedings upon this ground were in the exceptions filed to the master's first report. No question is raised as to the diversity of citizenship (indeed, it was upon this ground that he secured the removal from the state to the Circuit Court), the amount in controversy, or any other jurisdictional fact, save and except this one.

The rule, as we understand it, is this: If a defendant in a suit in equity answers and submits to the jurisdiction of the court, if it is competent for the court to grant the relief sought and it has jurisdiction of the subject-matter, it is too late for him to object that the plaintiff has a complete and adequate remedy at law. This objection should be taken at the earliest opportunity, as was said in Wylie v. Coxe, 15 How. 415–420, 14 L. Ed. 753:

"The want of jurisdiction being relied on by the defendant, it should have been alleged by plea or answer. It is too late to raise such an objection on the hearing in the Appellate Court, unless the want of jurisdiction is apparent on the face of the bill. Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005.

It is true that in the case of Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70, it was held that if the court, upon looking at the proofs, found none at all of the matters which would make a proper case for equity, it would be the duty of the court to recognize the fact and give it effect, though not raised by the pleadings or suggested by counsel, and to the same effect are numerous other cases. The correctness of the rule announced in these cases cannot be questioned, for every one must concede that the court for its own protection may prevent matters purely cognizable at law from being drawn into equity at the pleasure of the parties interested. But it by no means follows, where the subject-matter belongs to the class over which a court of equity has jurisdiction and the objection that the complainant has an adequate remedy at law is not made until after answer and after hearing before the master, that, when the matter comes to the court, the latter can exercise no discretion in disposing of the objection. Was a court of equity competent to grant the relief sought and did it have jurisdiction of the subject-matter? We think, with the learned judge who tried the case, that it was competent to grant the relief sought and that it had jurisdiction of the subject-matter.

In the opinion filed by him, found in the record on the first appeal, he said:

"The claim made by complainant being for profits derived from the transaction of business, it is apparent the ascertainment of such profits can only be made by the examination of the mutual accounts of the parties to the contract. The determination of the amounts of money paid, interest accumulating thereon, the amounts of rent collected from the property, the taxes paid, and also the ascertainment of the amount of money or property belonging to the defendant, now in the hands of the complainant, arising from the transaction of the business provided for in the contract. Thus a mutual accounting of intricate and involved accounts running for a period of years must be examined and settled before it can be decreed any profits have arisen from the transaction of the business. It could hardly be contended such accounting may be taken before a jury with any reasonable degree of accuracy or certainty of result." Kirby v. Railroad Co., 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569; Parkersburg v. Brown, 106 U. S. 487, 1 Sup. Ct. 442, 27 L. Ed. 238.

It is well settled that the jurisdiction in equity attaches unless the legal remedy, both with respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances. As stated by Judge Sanborn of this court, in the case of Castle Creek Water Co. v. City of Aspen, 146 Fed. 8, 76 C. C. A. 516:

"Where the remedy at law and the remedy in equity involve an accounting and the consideration of many items, the remedy in equity is more complete and efficient, and better adapted to attain the ends of justice than the remedy at law."

And then, too, it is to be noticed, as was suggested by the Circuit Court, that the relation existing between the parties, as created by the contract, was in its nature fiduciary.

Whether this contract is sufficient to create a copartnership between the parties in respect to the lands in controversy, it is not necessary to decide, although we are inclined to the view that it is not sufficient for that purpose, but the result is the same; for, if not copartners, Hapgood, the defendant, would still hold the title in trust for the purposes specified in the contract. Seymour v. Freer, 8 Wall. 202, 19 L. Ed. 306; Shaeffer v. Blair, 149 U. S. 148, 13 Sup. Ct. 856, 37 L. Ed. 721. The right to resort to equity under the circumstances of this case admits, we think, of no doubt either upon principle or authority.

The first, third, and fifth questions are questions of fact; the first having been submitted to a jury and the third and fifth being findings of the master approved by the court. The first question is disposed of by the verdict of the jury. Upon this question a special issue was formed, testimony taken, and the question argued and submitted to the jury under instructions of the court, to which no objection was made. In such case the rule is that the verdict of the jury must be taken as presumptively correct, and so far as it depends upon conflicting testimony or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, must be treated as conclusive. Davis v. Schwartz, 155 U. S. 636, 15 Sup. Ct. 237, 39 L. Ed. 289.

The questions numbered 3 and 5 were based upon findings of the master made pursuant to an order of court referring the case to him to take the testimony and report his findings of fact and conclusions of law thereon. This, it is insisted by the defendant, was done without his consent and in this he is supported by the record, as no express

stipulation or consent affirmatively appears therein. The rule is that, where a reference is made by consent of the parties and the findings of the master are concurred in by the court, that they, like the special verdict of a jury, are presumptively correct, and will be permitted to stand unless obvious errors of law or an important mistake of fact has intervened. Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649. But where, as in this case, the reference was made upon motion of one of the parties and not by agreement of both, the master's finding does not have the force of a special verdict or the report of a referee or master where such consent is given, and on exceptions thereto the court must determine by its own judgment the controversy presented, and upon appeal the court of review has the same power and responsibility. Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764.

The record, we think, shows clearly that the court had these rules in mind at the time this reference was made, because it required the master to report not only his findings of fact and conclusions of law, but to report also the evidence upon which such findings of fact and conclusions of law were based. That the court did examine the evidence and determine the questions by its own judgment is shown by the fact that in the opinion filed with the record it is said, in speaking of the matter suggested by the third question:

"However, I am more inclined from a reading of the entire proofs on this subject to attribute the conduct of the plaintiff to a careless disregard of his duties in this respect, than to any intention to wrong or defraud the defendant."

After a careful examination of the record, we are not prepared to say that these findings are erroneous. There was certainly testimony in the case tending to support them.

The fourth question will have to be answered in the affirmative. The suit being for an accounting of net profits realized from the real estate transactions, and treating the contract as at an end, in so far as it related to any further performance, and in fact for all purposes except the estimation of profits accrued thereunder, our views are in harmony with the views expressed by the court below to the effect that the property in controversy must be first reduced to cash, or its cash value, agreed upon by the parties, and an account stated between them for the amount of profits, if any, before the profits realized can be ascertained. These conclusions necessarily require an affirmative answer to the seventh question.

The sixth question involved relates to the action of the court in overruling defendant's motion to set aside, and in confirming the sale of the real estate as reported by the special master. Upon this motion the Circuit Court heard evidence and the entire proceeding relating to the sale including the decree is set out in the transcript filed in this court March 1, 1907. Our examination of the record and the proceedings relating to the sale lead us to the conclusion that it was in all respects regular and fair, and, without going into the details of the evidence, we think the record discloses no error in the consideration or disposition of the case by the Circuit Court. That the decree

appealed from is a final decree, within the meaning of the act of Congress providing for appeals from the judgments and decrees of the Circuit Court, is not, under the decisions of the Supreme Court and of this court, open to question. Stovall v. Banks, 10 Wall. 583, 19 L. Ed. 1036; Mower v. Fletcher, 114 U. S. 127, 5 Sup. Ct. 799, 29 L. Ed. 117; Lewisburg Bank v. Sheffey, 140 U. S. 445, 11 Sup. Ct. 755, 35 L. Ed. 493; Chase v. Driver, 92 Fed. 780, 34 C. C. A. 668; Morgan v. Thompson, 124 Fed. 203, 59 C. C. A. 672.

The purchasers at the sale were permitted to file a brief and participate in the oral argument, but, as the conclusion reached is that the decree of the Circuit Court must in all things be affirmed, it is unnecessary to consider or discuss the questions suggested by the purchasers. Their rights are fully protected by the decree.

Decree affirmed.