## MINNESOTA & ONTARIO PAPER CO. v. SWENSON EVAPORATOR CO.

(Circuit Court of Appeals, Eighth Circuit. July 3, 1922.)

No. 6069.

1. Appeal and error ⚖⇒80(6)—Judgment for specified amount on all counts except one, and granting a new trial as to such excepted count, held a final judgment, reviewable on writ of error.

Judgment for plaintiff for a specified amount "upon all causes of action contained in plaintiff's complaint except the fourth cause of action, and upon all counterclaims of defendant except the one contained in subdivision 6 of defendant's amended answer, and that a new trial herein be granted, restricted to the said fourth cause of action contained in plaintiff's complaint and to the counterclaim contained in subdivision 6 of defendant's amended answer," and authorizing execution thereon after expiration of 60 days' stay, held a final judgment, subject to review on writ of error.

2. Execution ⚖⇒158(1)—Withheld where judgment is awarded on certain counts and new trial granted as to other counts.

Where judgment awards plaintiff, a foreign corporation, a specified amount on all counts except one, and grants a new trial as to such excepted count, and as to a counterclaim thereto, a proper practice is to withhold execution of any part of the judgment or decree on proper terms of securing the payment of the judgment, if finally found to be right, until the entire litigation is determined, so that the whole case may be carried up and reviewed on a single appeal.

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Sales ☜89—Evidence held admissible to prove that buyer agreed to changes in goods ordered.**

In action by seller of machinery, including smelters, for balance of purchase price of goods, in which the seller claimed, as against contention that the machinery was defective, that the failure of the machinery was due in part to defective foundations, with which seller had nothing to do, and that the buyer participated in designing the machinery, the smelters being manufactured by seller only on special orders, letters from buyer to seller, stating that the drawings for the double smelter were made in seller's office, and a telegram from seller to buyer, asking buyer's superintendent to come to seller's office, where the seller would help him design the smelters and the machinery, *held* admissible to show that buyer *consented to changes,* and *accepted the machinery substantially different from that specified in the contract with full knowledge of the changes.*

**4. Witnesses ☜269(1)—Cross-examination must be confined to testimony brought out on direct examination.**

The cross-examination of a witness must be confined to testimony brought out on direct examination, and, if the adverse counsel desire to examine a witness, they must make him their own witness at the proper time.

**5. Appeal and error ☜971(2)—Evidence ☜546—Competency of expert witness discretionary with court.**

The competency of an expert witness is to a great extent discretionary with the trial judge, and the ruling of the court will be reversed only for abuse of such discretion.

In Error to the District Court of the United States for the District of Minnesota; Wilbur F. Booth, Judge.

Action by the Swenson Evaporator Company against the Minnesota & Ontario Paper Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Robert Driscoll, of Minneapolis, Minn. (William A. Lancaster, David F. Simpson, John Junell, and James E. Dorsey, all of Minneapolis, Minn., on the brief), for plaintiff in error.

John M. Zane, of Chicago, Ill. (Charles F. Morse, of Chicago, Ill., F. W. Root, of Minneapolis, Minn., and Harold W. Norman, of Chicago, Ill., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and TRIEBER and MUNGER, District Judges.

TRIEBER, District Judge. The complaint contained four counts, each to recover the balance of the purchase price for machinery manufactured, sold, and delivered by the defendant in error, hereafter referred to as the plaintiff, to the plaintiff in error, referred to hereafter as the defendant. The machinery was intended for the reclaiming department of a Kraft mill, intended to be erected by the defendant for the manufacture of Kraft paper. The contract, which was in writing, provided for (1) two digestors; (2) ten diffusers; (3) one evaporator; (4) three incinerators; (5) three smelters; (6) caustic and melt tank agitators, transmissions, etc.; (7) three boilers; (8) three fans; (9) two smelter blowers.

It provided the size of and the materials to be used for the different machines, and that the plaintiff guarantees that the workman-

---

☜For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

ship and material entering into this contract will be first-class in every respect, and that parts proving to be defective within a period of one year from date of erection of the part will be replaced f. o. b. point of fabrication. It also provides for the capacity of the machines, and the terms of payments; the price to be $170,000 for all the machines contracted for. It further provided that the price is not to include services of erection engineers, which are to be paid for by the defendant at $10 a day and traveling and living expenses for the engineer superintending work of assembly of machinery shipped knocked down, and $6 a day and traveling and living expenses for the engineer erecting the boilers.

The complaint, after alleging in each of the counts the manufacture, delivery, and erection of the machinery under the supervision of the engineers, claims in the first count a balance due of $28,131.75 on the machinery contracted for; in the second count, the sum of $3,354.78 for the services and expenses of the engineers furnished by it, and who superintended and erected the plant. The third count claims $3,640.57 for merchandise furnished defendant at its request; and the fourth claims a balance of $5,750 due on certain disc operators sold and delivered to defendant at its special request.

The answer, while admitting the contract and delivery of the machinery, and acceptance thereof, claims that it did so without knowledge or notice of the defects therein, relying upon the warranties and representations of plaintiff; that the machinery was intended for the construction and operation of a mill for the manufacture of Kraft pulp, with a capacity of 75 tons of Kraft pulp daily, of which plaintiff was fully informed, at and prior to the making of the contract; that for the economical and proper operation of the said mill it was necessary that each of the units and appliances thereon should fully comply with the descriptions, etc., as set forth in the contract, and that a defect or deficiency in any one would destroy the usefulness of the entire plant, of all of which plaintiff was fully informed at the time of the making of the contract; that plaintiff's duty, under the contract, was to furnish skilled engineers for the purpose of supervising the assembling of the machinery; that defendant has done everything required of it; that the two digestors were weak, defective, inadequate, and of improper material and workmanship, and had improper attachments, which did not properly support the digestors; that the digestors were not designed for a working pressure over 125 pounds, by reason whereof they were broken while in operation under pressure below 125 pounds; that the 10 diffusers were weak and defective, and broke when operated; that the evaporator was so defective that its capacity is less than half of the capacity stipulated; that the incinerators and the driving gear were inadequate and broke down so frequently that they could not be operated, in fact, all the machinery specifically set forth in this subdivision of the answer is alleged to have been defective and incapable of operating the mill and performing the services intended; that defendant relied wholly on plaintiff and without knowledge of the defects; that the machinery was all set up by the engineers of the plaintiff, defendant expending

in the preparation for and placing the machinery $250,000; that it expended $50,000 in preparation of operating the mill by the purchase of materials, etc., and in operating it it expended $50,000 in repairs, services, and expenses of operation in its attempt to operate the mill with said machinery; that such machinery cannot be purchased in the market, and it lost the use of the mill from August, 1917, to June 1, 1919, suffering $700,000 damage.

It then filed a counterclaim, marked subdivision 6 of the answer, in which the allegations of the defects hereinbefore stated are repeated, and charges that the disc evaporators were so defective as to be worthless, and that by reason thereof the cost of installing was $5,000, and it asks judgment for that sum and the $5,750 it had paid plaintiff on the purchase price.

The reply denied all the allegations in the answer and counterclaim. There was a trial to a jury, and a verdict for the full amounts claimed in the four counts, amounting, with interest, to $43,800, for which judgment was entered. There were a number of stays of execution granted in order to enable the defendant to prepare a motion for a new trial.

On the hearing of the motion for a new trial, the motion was sustained, unless the plaintiff consent that said judgment be reduced by the sum of $6,735.16, the amount awarded by the verdict of the jury on the fourth count, with the interest thereon, and—

"if such consent be filed, the said judgment shall be so reduced, and the new trial shall be restricted to the fourth cause of action contained in plaintiff's complaint, and to the counterclaim contained in subdivision 6 of defendant's amended answer."

The plaintiff having filed its written consent to the reduction, the former judgment entered on the verdict of the jury was set aside and a new judgment entered, for $37,702.24, which the judgment recited—

"shall be upon all causes of action contained in plaintiff's complaint, except the fourth cause of action, and upon all counterclaims of defendant, except the one contained in subdivision 6 of defendant's amended answer, and that a new trial herein be granted, restricted to the said fourth cause of action contained in plaintiff's complaint and to the counterclaim contained in subdivision 6 of defendant's amended answer."

The judgment further provided for 60 days' time within which to prepare the bill of exceptions, and "that execution be stayed pending the preparation and filing for allowance of such bill of exceptions." From this judgment this writ of error is prosecuted by the defendant

[1] The first question to be determined is whether this last judgment is final, in the sense that it may be reviewed on this writ of error. As the judgment authorized execution thereon after the expiration of the 60 days' stay, we are of the opinion that it is a final judgment for the purpose of prosecuting the writ of error. A leading case on that subject is Forgay v. Conrad, 6 How. (47 U. S.) 201, 204, 12 L. Ed. 404. It was there held:

"When the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the com-

281 F.—40

plainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal."

The same conclusion was reached by this court in Chase v. Driver, 92 Fed. 780, 785, 34 C. C. A. 668. The last-cited case has been followed by this court ever since. Hapgood v. Berry, 157 Fed. 807, 814, 85 C. C. A. 171; Byrne v. Jones, 159 Fed. 321, 328, 90 C. C. A. 101; City of Des Moines v. Des Moines Water Co., 230 Fed. 570, 144 C. C. A. 624; Felker v. Southern Trust Co. (C. C. A.) 264 Fed. 798. If defendant had not prosecuted this writ of error, and superseded the execution of the judgment, a writ of fieri facias could have been issued after the expiration of the 60 days' stay, and its property levied on to satisfy it.

[2] It is true the defendant, on the trial of the fourth count and the counterclaim thereto, may recover a judgment against the plaintiff, which would materially reduce the judgment in favor of the plaintiff, and, having satisfied this judgment, may have to sue the plaintiff in another jurisdiction, as it is a corporation created under the laws of the state of Illinois. A proper practice in such cases is to withhold execution of any part of the judgment or decree, upon proper terms of securing the payment of the judgment, if finally found to be right, until the entire litigation is determined, so that the whole case may be carried up and reviewed on a single appeal, and the purpose of Congress in limiting appeals to final decrees or judgments carried into effect. Such a proceeding is suggested in Forgay v. Conrad, supra. In that case, as explained in Beebe v. Russell, 19 How. (60 U. S.) 283, 287, 15 L. Ed. 668, and McGourkey v. Toledo, etc., Ry., 146 U. S. 536, 547, 13 Sup. Ct. 170, 3 L. Ed. 1079, execution had been ordered as in this case, and therefore was final for the purposes of appeal.

[3] There are ten assignments of error, but counsel have consolidated some of them and presented them in six assignments. Five of these are exceptions to the admissibility of certain evidence of the plaintiff and refusal to admit certain testimony offered by the defendant. The sixth is to an instruction given by the court. The first is as to admission of letters from the defendant to plaintiff written August 28, 1918, in which he states that the drawings for the double smelter were made in plaintiff's office, and a telegram from plaintiff to defendant of February 2, 1917, in which the plaintiff asked defendant's superintendent to come to its office, and they will help him design the smelters and concrete disc evaporators. As plaintiff claimed that the cause of the failure of these machines was due in part to defective foundations, with which it had nothing to do, and that in designing the machinery defendant actively participated, having hired an experienced superintendent for that purpose, the letter and telegram were admissible, especially as plaintiff did not manufacture smelters, except on special orders. The specifications in the contract for the smelters are in general terms. The smelters furnished were substantially different from those specified in the contract, and it was proper to introduce evidence that defendant agreed to the changes and accepted them with full knowledge of the changes. The evidence objected

to had a tendency to establish knowledge and consent by the defendant of the changes, having possession of the blueprints which showed the changes and the kind of smelters made, delivered, and accepted, and that defendant by its superintendent assisted, and finally approved the blueprints, which showed the changes made. What these changes were we cannot tell, as the blueprints, introduced at the trial, are not in the record. It is therefore impossible for us to tell how the admission of this evidence could be prejudicial.

[4] The court sustained objections to a question asked one of plaintiff's witnesses on cross-examination, in relation to matters not testified to on direct examination. This was clearly right, as the cross-examination of a witness must be confined to testimony brought out on the direct examination. If counsel desire to examine a witness on new matter, they must make him their own witness, at the proper time. Resurrection Mining Co. v. Fortune Gold Mining Co., 129 Fed. 668, 674, 64 C. C. A. 180; Illinois Central R. R. v. Nelson, 212 Fed. 69, 74, 128 C. C. A. 529.

The question in assignment 5 was also properly excluded, as attempting to show by this witness, on cross-examination, whether it was the plan that the boilers should furnish steam, without stating whose plans they were, nor whether it referred to the specifications in the contract.

The question in assignment 7 asked this witness on cross-examination about the purpose of fire boxes, a matter not referred to on the direct examination, and was also inadmissible for the further reason that no fire boxes are mentioned in the contract and there was no guaranty of fire boxes.

[5] Assignment 8 raises the question of the competency of the witness Woodhead, called by plaintiff in rebuttal to testify as an expert. He was clearly competent, and there was no abuse of discretion by the trial court in permitting him to testify. Such evidence is left to a great extent to the discretion of the trial judge, and will only be reversed if that discretion was abused. Gila Valley R. R. Co. v. Lyon, 203 U. S. 465, 475, 27 Sup. Ct. 145, 51 L. Ed. 276; Gillespie v. Collier, 224 Fed. 298, 139 C. C. A. 534; Kreuzer v. United States, 254 Fed. 34, 165 C. C. A. 444.

The only exception to the charge of the court insisted on by counsel is:

"Defendant excepts to each instruction separately given plaintiff."

The plaintiff had requested the court to give nine special instructions. The court gave six of these instructions, in addition to its general charge, but modified some of them. The only one of these instructions given by the court which is relied on as error was:

"If the jury finds from the evidence that no test was made by defendant of such machinery in a proper way with the different machines being operated together, * * * then the jury should find against the defendant upon its counterclaim"

—the court adding, "as to capacity and proportional guaranties." It is unnecessary to determine whether the exception taken was sufficient,

or whether the instruction was erroneous, as it applied only to the counterclaim of defendant, and the court has granted a new trial on the counterclaim.

We find no prejudicial error, and the judgment is affirmed.