FIRST SAVINGS BANK & TRUST CO. OF ALBUQUERQUE. N. M., v. GREENLEAF.

(Circuit Court of Appeals, Eighth Circuit.    December 3, 1923.)

No. 6254.

1. Equity ⬅138—Prayer for damages properly joined with prayer for cancellation and rescission.

A prayer to recover damages in an amount equal to the difference between the purchase price and the value of the property could be joined with prayer for cancellation and rescission of transfer of real estate.

2. Equity ⬅53(4)—Too late during taking of testimony for objection that adequate remedy at law exists.

In suit to cancel and rescind conveyance of real estate or, alternatively, for damages, where defendant relied upon laches, ratification, and fair dealing, and, the issues being joined, the case went to trial, defendant submitted to the jurisdiction of the court, and it was too late during the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

taking of testimony to object that as to the alternative relief there was an adequate remedy at law and that defendant was entitled to a trial by jury.

3. **Trusts ⬤�196270—Utmost good faith necessary between trustee and cestui que trust.**

The law insists upon the utmost good faith between trustee and cestui que trust, and, if the relation is established and more than mere suspicion of undue advantage is disclosed the trustee is held to strict account.

4. **Trusts ⬤�196359(3)—Equity has power to require trustee to account, though action at law for damages maintainable.**

In a suit to cancel and rescind a conveyance of real estate for fraud or, in the alternative, to recover the difference between the selling price and the value of the property, where it appeared that defendant stood in a trust relation to complainant, equity, independent of the main action, had jurisdiction of the alternative demand because of its jurisdiction to require trustees to account, though an action at law for damages might have been maintained.

5. **Trusts ⬤�196343—Cestui que trust not estopped to seek relief in damages.**

Where trustee took advantage of cestui que trust and obtained her land at an inadequate price, giving note secured by mortgage, she was estopped from recovering the property where, after learning of the inadequacy of the price, she retained the note and mortgage and hypothecated them and permitted the trustee to make improvements; but this ratification did not affect her right to recover damages.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Bill by Olivia G. Greenleaf against the First Savings Bank & Trust Company of Albuquerque, N. M. Decree for complainant, and defendant appeals. Affirmed.

A. B. McMillen, of Albuquerque, N. M. (Lawrence F. Lee, of Albuquerque, N. M., on the brief), for appellant.

J. O. Seth, of Santa Fé, N. M. (Summers Burkhart, of Albuquerque, N. M., on the brief), for appellee.

Before STONE, Circuit Judge, and VAN VALKENBURGH and KENNEDY, District Judges.

VAN VALKENBURGH, District Judge. The appellee was on the 3d day of May, 1918, the owner of certain premises described in the complaint, and situated in the city of Albuquerque, N. M. On that date she conveyed the premises to the appellant in trust for the following purposes:

"To manage, control, maintain, improve, repair, care for and lease said property so conveyed, collect and receive the rents and income thereof, and to pay over the net income thereof to or for the benefit of said Olivia G. Greenleaf, subject to any and all agreements and assignments hereafter to be made for the application or distribution of said income. This trust to continue to the death of said Olivia G. Greenleaf. Upon the termination of said trust by the death of Olivia G. Greenleaf all the rights, title and interest hereby conveyed to the said second party in trust shall immediately revert to and vest in the heirs of the said first party, without any further grant or conveyance."

The appellant accepted said trust, entered into possession of the premises, and continued as such trustee until in the month of Octo-

⬤�196For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ber, 1920. The premises so conveyed consisted of lots having a frontage of 50 feet and a depth of 75 feet, upon which stood a three-story brick building. The lower floor of this building was used as a storeroom, and the two upper floors for hotel purposes, with an adjoining hotel. For about three years prior to October 18, 1920, the appellee, a widow 85 years of age, had been living in California, and was personally unfamiliar with the changes that had taken place in real estate values in Abuquerque following the close of the World War. Shortly prior to the latter date the appellant sent its vice president, Charles S. White, to California for the purpose of negotiating a purchase of the premises above described, which appellant desired in part to remodel and occupy for its banking purposes. Appellee alleges that White represented to her that the property was worth not to exceed $42,500, and that she would receive a much larger income by selling the property to the appellant for that price and taking the appellant's note secured by mortgage for the full purchase price at 8 per cent. per annum, than she would receive from the rentals of the property. It is further alleged that appellee had known White from boyhood, and had absolute confidence in his ability and integrity; and, relying on his representations and in ignorance of the true value of the property, alleged to be worth about $65,000 at that time, executed on October 18, 1920, a warranty deed conveying the premises to appellant.

On or about October 13, 1920, the appellant, apparently in view of its proposed dealing with appellee in the purchase of the property which it held in trust, executed an instrument purporting to terminate the trust relation and to reconvey the premises to the appellee. This instrument was not brought to the attention of the appellee, and she had no knowledge of its existence until after the execution and delivery of her deed to appellant. It is conceded that appellee first obtained knowledge of the alleged falsity of the representations made to her as to the value of her property on or about November 15, 1920, and on the following day she executed a power of attorney to her son, an attorney at law, himself a nonresident of New Mexico, authorizing him to protect her rights in the premises and to take such action as might be deemed necessary. Her son, under this authority, employed an attorney in Albuquerque to handle the matter; but, as appears from the record, no steps were taken looking toward a repudiation of the sale until the filing of this suit on the 10th day of December, 1921. Meantime, the appellee continued to keep the note and mortgage given as purchase price, as above stated, and on or about August 25, 1921, hypothecated the same to the First National Bank of San Diego, Cal., to secure a loan of $8,000 and as a basis of credit referred said bank to the officers of appellant for information as to this collateral security, and through her son refused to accept payment thereof when payment before maturity was suggested. Appellee had also accepted and received the interest upon said purchase price note as it accrued.

On or about September 1, 1921, the appellant commenced the work of remodeling the lower story of said building for its use as a banking room; this work had proceeded to a very substantial extent, and,

as found by the trial court, up to November 1, 1921, the appellant had expended in remodeling said building, or had become bound for contracts for expenditures in the remodeling of said building, in excess of the sum of $56,000. The court further found that at that time said building was in such a condition from the work of remodeling that it was unfit for any use of the ground floor or basement; and also that any considerable delay in the work of carrying on the construction would have been attended with great danger and probable destruction of the building.

The appellee by her bill alleged that because of her unfamiliarity with property conditions at the time the sale was made, her advanced age, and her lack of experience in transacting business without the advice and counsel of persons in whom she had confidence, she was induced to rely upon the appellant and its agents, who were her trustees, in the handling of said property, and made such sale in ignorance of the value of the property sold; that that value was fraudulently and falsely represented to her by her said trustee to her pecuniary damage. She prayed that upon final hearing the appellant be declared to be her trustee of the legal title to the property held by it under her deed of October 18, 1920; that appellant be required to surrender said deed for cancellation and to reconvey the property to appellee upon the surrender to it of its note given for the purchase price thereof; or, in the alternative, if this be deemed impossible, that appellant be decreed to pay appellee the amount of the difference between the consideration paid by it for said property, and the actual value of said property on the date of the sale as ascertained by the court, and for such other and further relief as might be deemed just and equitable.

The court found the issues for appellee as to the trust relationship existing and the fraud and misrepresentations practiced and made. It found, however, that because of the ratification of the sale to be deduced from the retention of the note and mortgage and the acceptance of interest accruing after notice of the fraud, and because of the delay, which the court termed "laches," in seeking redress until after appellant had expended large sums of money in remodeling the building, and had so altered the condition of that building that the status of the parties antedating the sale could not be restored, the appellee could not be permitted to rescind the contract and recover the property as prayed. Upon the prayer for alternative relief, however, the court found, the trust relation and the fraud being established, that appellee should recover the difference between the actual value of the property and the purchase price on the date of sale; which the court fixed at $10,000, with interest thereon at the rate of 6 per cent. per annum from the 18th of October, 1920.

It is contended by the appellant: ·

1. That the complaint asks for inconsistent relief; that the prayer to recover damages cannot be joined with the prayer for cancellation and rescission.

2. That having found the appellee guilty of laches there was nothing for the court to do except to dismiss the suit, because laches is a complete defense to a suit in equity.

3. That the claim for difference between purchase price and value could not be an incident to a suit for cancellation and a proper subject for equitable jurisdiction; that upon that issue appellant was entitled to trial by jury.

4. That her ratification was equivalent to making a new contract after she had full knowledge of all the facts. Appellant also contends that the facts in the case show no misconduct upon the part of the appellant or its agents, and did not justify the court in finding that the property was worth $10,000 more than the price paid.

So far as these latter points are concerned, it is sufficient to say that the trust relation existing between the appellant and appellee was established beyond dispute. As to the representations made, or the suppression of important facts concerning the value of the property, the evidence adduced is substantial and amply sufficient to support the finding of the chancellor. The appellee was a woman of very advanced years, residing at a distance from the situs of the property and unacquainted with the changes that had taken place in property values following the close of the war. The court can almost take judicial notice of the fact that property values had greatly advanced all over the country at the time this sale took place. This was not a mere transitory condition. Appellant sent one of its chief officers, a man in whom appellee reposed special confidence, from Albuquerque to California for the purpose of procuring this property. It knew that it occupied a position of trust and confidence, as evidenced by the fact that it deemed it necessary to execute an instrument terminating that trust relationship. It did not, however, disclose this action to appellee until after the agreement for sale had been made, thereby leaving appellee under the impression that she was still dealing with appellant in its capacity of trustee and confidential adviser.

The testimony as to values was conflicting, but the amount found by the trial court was well within the proofs, and, we think, within the weight of the evidence.

[1] Our concern, therefore, must be with the four contentions of appellant as above enumerated. The criticisms that the complaint asks for inconsistent relief, that the prayer to recover damages cannot be joined with the prayer for cancellation and rescission, and that the claim for difference between purchase price and value could not be an incident to a suit for cancellation and a proper subject for equitable jurisdiction, seem to be disposed of by controlling decisions of the Supreme Court. The case of Friederichsen v. Renard, 247 U. S. 207, 38 Sup. Ct. 450, 62 L. Ed. 1075, is decisive upon these points. In that case the plaintiff, having been defrauded by an exchange of land, sued in the District Court to annul his contract and deed and for incidental damages. The court finding that by acts of ownership, he had affirmed the contract, by its order, under Equity Rule 22, transferred the case to the law side as an action for damages for the deceit, and the bill was amended accordingly, but with no substantial change in the allegations of fraud. Meanwhile, the period of the statute of limitations had expired. The Circuit Court of Appeals held that this fact defeated recovery, but the Supreme Court held

that, since the money relief prayed in the amended petition could properly have been sought as alternative relief in the original bill in equity, and since the transfer to the law side was made upon order of the court in the exercise of its discretion, the plaintiff could not be held to have made such an election of inconsistent remedies as would let in the defense of limitations against the amended demand. The outstanding points in the decision are: That in the same bill in equity a complainant may join a prayer for equitable relief, very similar to that sought in this case, with an alternative prayer for money relief in case the facts may disclose that he is estopped from obtaining the equitable relief prayed; also, that if, in a case of this kind, the court has acquired jurisdiction in equity, an order transferring the action to the law side is an order made in the exercise of a chancellor's discretion under warrant of an equity rule. As was said in Hardin v. Boyd, 113 U. S. 756, loc. cit. 763; 5 Sup. Ct. 771, loc. cit. 774 (28 L. Ed. 1141):

"It is a well-settled rule that the complainant, if not certain as to the specific relief to which he is entitled, may frame his prayer in the alternative, so that if one kind of relief is denied another may be granted; the relief, of each kind, being consistent with the case made by the bill. * * * Under the liberal rules of chancery practice which now obtain, there is no sound reason why the original bill in this case might not have been framed with a prayer for the cancellation of the contract upon the ground of fraud, and an accounting between the parties, and, in the alternative, for a decree which, without disturbing the contract, would give a lien on the lands for unpaid purchase money. The matters in question arose out of one transaction, and were so directly connected with each other, that they could well have been incorporated in one suit involving the determination of the rights of the parties with respect to the lands."

[2] Appellant further insists that upon the issue of damages prayed as alternative relief there was an adequate remedy at law and appellant was entitled to a trial by jury. This claim is opposed by appellee upon two grounds:

First, that this objection, if tenable, was not seasonably interposed. Appellant in its answer made no complaint of the prayer for alternative relief. It relied upon its defenses of laches, ratification, and fair dealing. The issues being joined, the case went to trial, and not until a later point in the testimony was the suggestion made that damages should be recovered at law rather than in equity. The general rule is that if the matter in controversy is in the general scope of equity jurisdiction, and it is competent for the court to grant the relief sought, an objection that an action should have been brought at law instead of in equity may be waived by failure to take advantage of it at the proper time, and if the defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff has a plain and adequate remedy at law.

"But if defendant deemed the complainant's remedy, if any existed, complete at law, it should have challenged the jurisdiction upon that ground before entering upon its defense; and not having done so the court will proceed to a decree without stopping to inquire if there might not also be a remedy at law, the subject-matter as alleged being of equitable cognizance." Hawkeye Gold Dredging Co. v. State Bank of Iowa Falls (C. C.) 157 Fed. 253, 258.

"If a defendant in a suit in equity answers and submits to the jurisdiction of the court, if it is competent for the court to grant the relief sought and it has jurisdiction of the subject-matter, it is too late for him to object that the plaintiff has a complete and adequate remedy at law." Hapgood v. Berry, 157 Fed. 807, 812, 85 C. C. A. 171, 176.

And again:

"The want of jurisdiction being relied on by the defendant, it should have been alleged by plea or answer." Wylie v. Coxe, 15 How. 415, 420, 14 L. Ed. 753; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005.

See, also, American Surety Co. v. American Mills Co. (C. C. A.) 273 Fed. 67, 72; Reynes v. Dumont, 130 U. S. 354, 395, 9 Sup. Ct. 486, 32 L. Ed. 934; Gormley v. Clark, 134 U. S. 338, 349, 10 Sup. Ct. 554, 33 L. Ed. 909; Brown v. Lake Superior Iron Co., 134 U. S. 530, 536, 10 Sup. Ct. 604, 33 L. Ed. 1021; Allen v. Pullman's Palace Car Co., 139 U. S. 658, 662, 11 Sup. Ct. 682, 35 L. Ed. 303; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 381, 14 Sup. Ct. 127, 37 L. Ed. 1113; Perego v. Dodge, 163 U. S. 160, 164, 16 Sup. Ct. 971, 41 L. Ed. 113; Beyer v. LeFevre, 186 U. S. 114, 118, 22 Sup. Ct. 765, 46 L. Ed. 1080.

The second ground urged by appellee in opposition to this contention of appellant is that if a case in equity is properly stated and established by the proofs, a court of equity has jurisdiction to grant any relief within the scope of the issues, even though such relief may be of a nature ordinarily cognizable at law; but in order that the legal remedy may be thus enforced in equity, the equitable right must be established; that there is a distinction between a case where the equitable right is disclosed, but some specific relief is found to be impracticable, and one where the equitable right, as such, is defeated by the situation disclosed by the proofs. Thus, where fraud is established and where ordinarily the right of rescission clearly appears, but where because it is impossible to put the parties in statu quo, it is found impracticable to restore the property fraudulently procured, the equitable right of the complainant has been established, but he is compelled to be satisfied with the alternative relief of a money judgment instead of being reinvested with his title; that a court of equity, having taken jurisdiction by reason of the equitable allegations, retains it for all purposes. An imposing and persuasive array of decisions may be adduced supporting this position of appellee either in terms or by necessary inference. McGowan v. Parish, 237 U. S. 285, 295, 35 Sup. Ct. 543, 59 L. Ed. 955; Southern Pacific v. United States, 200 U. S. 341, 347, 351, 352, 26 Sup. Ct. 296, 50 L. Ed. 507; County of Mobile v. Kimball, 102 U. S. 691, 707, 26 L. Ed. 238; Cathcart v. Robinson, 5 Pet. 264, 278, 282, 8 L. Ed. 120; Friederichsen v. Renard, 247 U. S. 207, 38 Sup. Ct. 450, 62 L. Ed. 1075; Camp v. Boyd, 229 U. S. 530, 551, 33 Sup. Ct. 785, 57 L. Ed. 1317; Pratt v. Law, 9 Cranch, 456, 494, 3 L. Ed. 791; Eames v. Home Ins. Co., 94 U. S. 621, 24 L. Ed. 298; Marks v. Gates, 154 Fed. 481, 484, 83 C. C. A. 321, 14 L. R. A. (N. S.) 317, 12 Ann. Cas. 120; Fay v. Hill, 249 Fed. 415, 420, 161 C. C. A. 389.

"The [Supreme] Court at an early day" established "the rule that, having properly acquired jurisdiction over the subject for a necessary purpose, it was the duty of the court to proceed and do final and complete justice between the parties, where it could as well be done in that court as in proceedings at law." Tayloe v. Merchants' Fire Ins. Co., 9 How. 390, 405, 13 L. Ed. 187; Howard v. Leete, 257 Fed. 918, 922, 923, 169 C. C. A. 68.

Although denying the equitable relief prayed, it was held by the Circuit Court of Appeals for the Sixth Circuit that—

"Equity would retain jurisdiction and enter a money judgment, it not appearing but that the bill was originally filed in good faith, and not as a subterfuge to give jurisdiction." Cincinnati & C. Traction Co. v. American Bridge Co. of New York, 202 Fed. 184, 120 C. C. A. 398; Hardin v. Boyd, supra.

In more or less direct opposition to this view the following cases should be cited: Marble Co. v. Ripley, 10 Wall. 339, 358, 19 L. Ed. 955; Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70; Russell v. Clark, 7 Cranch, 69, 90, 3 L. Ed. 271; Marchand v. Frellsen, 105 U. S. 423, 432, 26 L. Ed. 1057; Clark v. Wooster, 119 U. S. 322, 7 Sup. Ct. 217, 30 L. Ed. 392; Buzard v. Houston, 119 U. S. 347, 7 Sup. Ct. 249, 30 L. Ed. 451; Kramer v. Cohn, 119 U. S. 355, 357, 7 Sup. Ct. 277, 30 L. Ed. 439; Alger v. Anderson (C. C.) 92 Fed. 696; Linden Inv. Co. v. Honstain Bros. Co., 221 Fed. 178, 181, 136 C. C. A. 121; American Falls Mills Co. v. Standard Brokerage & Dis. Co., 248 Fed. 487, 489, 160 C. C. A. 497; Munger Laundry Co. v. National Marking Machine Co., 252 Fed. 144, 146, 164 C. C. A. 256.

While this apparent conflict in the decisons may be explained in part, at least, by differences in the situations presented in the various cases in which they were rendered, nevertheless inasmuch as the decision of this question is not essential to the disposition of the case before us, we prefer to reserve our determination thereof until it may become necessary in future litigation.

[3, 4] In this case another and conclusive reason exists for sustaining the jurisdiction in equity. Undoubtedly within the statutory period the appellee could have sued at law for any damages sustained which she could establish, but here the complaint sufficiently sets out the fiduciary relation existing. The trusteeship existed until after the deal was closed. The chancellor finds that this was fraud, and, at least that there was such a suppression of fact, and such an imposition upon the confidence of the appellee as to amount to fraud. The law insists upon the utmost good faith between trustee and cestui que trust. If the relationship is established and more than mere suspicion of undue advantage is disclosed, the trustee is held to strict account. As was said in Oelrichs v. Spain, 15 Wall. 211, 228, 21 L. Ed. 43:

"There is an element of trust in the case, which, wherever it exists, always confers jurisdiction in equity."

"When a charge of fraud involves the consideration of principles applicable to fiduciary and trust relations, equity has jurisdiction over it, as 'fraud' has a more extensive signification in equity than it has in law." Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005; Clews v. Jamieson, 182 U. S. 461, 479, 480, 21 Sup. Ct. 845, 45 L. Ed. 1183; Hunter v. United States, 5 Pet. 173, 188, 8 L. Ed. 86.

"In all cases in which an action of account would be the proper remedy at law and in all cases where a trustee is a party, the jurisdiction of a court of equity is undoubted. It is the appropriate tribunal." Fowle v. Lawrason, 5 Pet. 495, 8 L. Ed. 204.

In further support of this doctrine and of the power of a court of equity in such cases, when rightfully in possession of the cause as it is made by the bill, to proceed to determine the whole matter in controversy and grant full and complete relief, although the relief granted may be such as is usually had in a proceeding at law, see: National Bank of Commerce v. Equitable Trust Co., 227 Fed. 526, 532, 142 C. C. A. 158; Providence Min. & Mill. Co. v. Nicholson, 178 Fed. 29, 101 C. C. A. 157; George v. Wallace, 135 Fed. 286, 292, 68 C. C. A. 40.

It is our opinion that a court of equity unquestionably has jurisdiction of such matters, where a trustee is involved, independently of the main action for rescission.

[5] In so far as this phase of the controversy is concerned, the term "laches" is confused with "estoppel." There was no laches with respect to the alternative relief. Nothing has been done which would affect the right to recover damages, but the conduct of the complainant estopped her from recovering the property, and that is all the chancellor had in mind. Her ratification could have no more than the usual effect of affirming the sale but insisting upon damages because of the breach of trust. Friederichsen v. Renard, 247 U. S. 207, 38 Sup. Ct. 450, 62 L. Ed. 1075.

In this aspect the suit was seasonably brought.

It follows that the decree below should be affirmed. And it is so ordered.