## SAFE-CABINET CO. v. GLOBE-WERNICKE CO.

(Circuit Court of Appeals, Second Circuit. April 16, 1917.)

No. 59.

1. PATENTS ⬤➾328—ANTICIPATION—IMPROVEMENTS IN METALLIC STRUCTURES.
    Claims 1, 2, 5, 6, 8, 9, 11, 12, and 13 of the Wege patent, No. 999,929, for an improvement in metallic structures built of sheet metal or metal plates, consisting of interlocking parts which can be assembled and locked without screws, bolts, rivets, or other similar appliances, *held* anticipated and invalid.

2. PATENTS ⬤➾112(1)—PRESUMPTION OF VALIDITY.
    Where it was admitted by the Patent Office that a patent was granted inadvertently to the unsuccessful party to an interference proceeding, the usual principle that a patent is prima facie valid, and that the burden is on one sued for infringement to establish invalidity, was inapplicable.

    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 162.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Safe-Cabinet Company against the Globe-Wernicke Company. From a decree dismissing the bill, complainant appeals. Affirmed.

The Safe-Cabinet Company is a corporation organized and existing under the laws of the state of Ohio and has its principal place of business in the city of Marietta in that state. The Globe-Wernicke Company is a corporation organized and existing under the laws of the state of Ohio and has its principal place of business in the city of Cincinnati. It also has an established place of business in the borough of Manhattan in the city of New York.

The suit is brought for the alleged infringement of patent No. 999,929, granted by the United States Patent Office to the plaintiff as assignee of Peter M Wege for "fireproof cabinets and safes"; the same being metal containers

adapted for the preservation of documents against fire. The patent was granted on August 8, 1911, for "improvements in metallic structures," on an application filed May 14, 1910.

The court below dismissed the bill for want of equity.

James L. Steuart, of New York City (James H. Griffin, of New York City, of counsel), for appellant.

Robert H. Parkinson, of Chicago, Ill. (Wallace R. Lane, of Chicago, Ill., of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] The first question is as to the validity of the patent in suit. The court below dismissed the bill, on the ground that the claims in suit are invalid, unless perhaps restricted to the exact device shown in the application; the court being doubtful whether such restriction is permissible. If, however, such restriction be permissible, the court was satisfied there was no infringement.

The patent in suit is for "new and useful improvements in metallic structures." In the specification the patentee states:

' "My invention relates to improvements in metallic structures which are built up of sheet metal or metal plates which form the walls thereof, and the objects of my invention are to provide a strong rigid structure which can be manufactured at a low cost, and will possess great strength and rigidity, and the respective parts of which can be readily and easily assembled, and the parts of which are maintained and locked in their assembled positions, without making use of any screws, bolts, rivets, or other similar appliances."

The claims of the patent number 15, but of this number only claims 1, 2, 5, 6, 8, 9, 11, 12, and 13 are in suit. They are as follows:

1. A metallic structure, comprising in combination a frame of sheet metal provided with interlocking flanges, wall members provided with flanges adopted to interlock with the flanges on the frame, and means for locking said wall members in position in said frame.

2. A metallic structure comprising in combination a frame of sheet metal having a plurality of sides, each of which forms one of the walls of the structure, interlocking flanges on said frame, wall members provided with flanges adapted to interlock with the flanges on the frame; and means for locking said wall members in position in said frame.

5. A metallic structure comprising in combination a frame with a plurality of sides, each of which forms one of the walls of the structure, wall members adapted to fit into said frame and having a tension engagement with said frame, and a locking wall member constituting means for locking the other wall members in the frame.

6. A metallic structure comprising in combination a frame with a plurality of sides, each of which forms one of the walls of the structure, wall members adapted to fit into said frame, said wall members having a tension engagement with said frame, and a locking wall member constituting means for locking the other wall members in the frame, and means for locking said locking wall member in position in the structure.

8. A metallic structure comprising in combination a frame of sheet metal having a plurality of sides, each side forming one of the outer walls of the structure flanges on said frame, a plurality of sheet metal wall members adapted to fit into said frame flanges on said wall members adapted to contact with flanges on the frame and to be under tension when said wall members are forced into the frame, a locking wall member constituting means for locking the other wall members in position in the frame, and flanges on said locking wall members adapted to contact with other wall members under tension.

9. A metallic structure comprising in combination a frame of sheet metal having a plurality of sides, each side forming one of the outer walls of the

structures, flanges on said frame, a plurality of sheet metal wall members adapted to fit into said frame, flanges on said wall members adapted to contact with flanges on the frame and to be under tension when said wall members are forced into the frame, and a locking wall member constituting means for locking the other wall members in position in the frame, flanges on said locking wall member adapted to contact with other wall members under tension and means for locking said locking wall member in position in the structure.

11. A metallic structure comprising in combination a frame of sheet metal provided with interlocking flanges, wall members provided with flanges adapted to interlock with the flanges on the frame and a wall member constituting means for locking the other wall members in position in the frame.

12. A metallic structure comprising in combination a frame of sheet metal having a plurality of sides, each of which forms one of the walls of the structure, interlocking flanges on said frame, wall members provided with flanges adapted to interlock with the flanges on the frame, and a wall member constituting means for locking the other wall members in position in the frame.

13. A metallic structure comprising in combination a frame of sheet metal having a plurality of sides, each side forming one of the walls of the structure, flanges on said frame, a plurality of sheet metal wall members adapted to fit into said frame flanges on said wall members adapted to contact with flanges on the frame and to be under tension when said wall members are forced into the frame, and means for locking said wall members in position in the frame.

Every claim of the patent makes one element in the combination, either "a frame of sheet metal provided with interlocking flanges," or "a frame with a plurality of sides, each of which forms one of the walls of the structure." Both of these limitations upon the frame are recited in some of the claims, and at least one of them in all the claims. In all the claims, the interlocking combination of the wall members with such a frame is specified.

The specification describes the patent as composed of the following four main elements:

First. A "frame" made from resilient or yieldable sheet metal and provided with "interlocking flanges" projecting inwardly of the frame. This frame is rectilinear in shape, and forms the upper and lower outer walls, and the two outer side walls of the safe.

Second. A sheet metal plate, which forms the outer back wall of the structure.

Third. Four inner wall sections, provided with interlocking flanges which interlock with the flanges inside the frame. These inner wall sections are spaced from the outer walls, thereby providing a "dead air space" between said inner and outer walls. Said sections form the upper and lower inner wall members and the two inner side members of the cabinet.

Fourth. A back inner wall member, which serves the further function of locking the other wall members in their positions within the frame, under tension, when the flanges of said wall members are interlocked with the flanges within the frame.

The patent in suit is constructed on the serial system, where you start in with one piece and follow it up with another piece, which locks the first piece in place, and so on till you get to the last piece, and upon locking that piece in place everything is locked against displacement.

The plaintiff's counsel particularly directed the attention of the court to the fact that the so-called "frame" of the patent in suit, to attain strength and rigidity, is a distinct entity or unitary structure, and that,

when the inside wall members are assembled within this frame, they are retained therein by the interlocking flanges described and the co-operating action of the inner back wall member. This inner back wall member, being made to have a driving fit, is forced into its assembled position under considerable pressure, whereby the entire structure is placed under tension and the inner wall members retained in assembled position within the frame, without necessitating the employment of screws, bolts, rivets, or other similar appliances. In other words, the respective parts of the structure, viz., the exterior shell or frame and the inner shell or interior wall, are locked in their assembled positions without making use of any screws, bolts, rivets, or other similar appliances, to maintain them in assembled position.

It may not be important whether or not bolts or rivets are employed in the construction of the frame, if, in the case of fire, all the parts of the frame are directly exposed to the heat and expand uniformly. In such case there is no danger of shearing or rupturing rivets, or bolts used in the frame, per se. It is vitally important, however, that there be no bolts or rivets connecting the inner walls of the structure with the frame. This is because of the fact that such inner walls, not being directly exposed to heat, but being protected by the dead air space between the outer and inner walls, expand much more slowly and to a considerably less degree than the outer walls. Accordingly, such unequal expansion between the inner and outer walls would occasion the shearing of any rivets or bolts which might be employed in connecting them.

The old type of safes embodied double walls, between which was packed heat-insulating material, such as plaster of paris, concrete, asbestos, magnesia, and similar materials, with a view to making the safes fire proof. The outer and inner walls of these structures were rigidly secured together by bolts or rivets, so that the entire structure was practically a unitary one. The structures were not only heavy and cumbersome, but were open to serious disadvantages, the most fatal of which was the shearing of the rivets or bolts, uniting the outer and inner walls, when the structures were subjected to high temperatures, incident to fires

This unequal expansion between the outer and inner walls, often amounting to an inch or more, depending on the size of the safe, resulted in the shearing or rupturing of the bolts or rivets, thereby destroying the structure, and, usually the documents contained therein.

The first advance in the art over the structures thus described consisted in eliminating the fire proof packings employed; i. e, the plaster, concrete, and so forth, and the stamping up of the inner and outer walls from sheet metal. In these improved structures, the outer and inner walls were spaced apart, thereby providing a dead air space, which proved a sufficient insulator to protect the contents of the safe against external heat. These improvements resulted in a safe which was more economical to manufacture, and much lighter than the safes of the old type. In the sheet metal safes of the old type, either rivets or bolts, or both, were employed to secure the inner and outer walls in their assembled positions, with the attendant disadvantage already mentioned.

The court is asked to believe that the problem which confronted the patentee of the patent in suit was to construct a safe wholly of sheet metal and having the advantages referred to, such as economy of manufacture, lightness, great strength, and the employment of a dead air space between the outer and inner walls, in lieu of the fireproof medium, and yet devoid of the serious disadvantage inherent in sheet metal safes wherein the outer and inner walls were secured together by bolts or rivets. In other words, we are asked to believe the problem was to construct a strong rigid safe cabinet from sheet metal, of the general type specified, wherein the outer and inner walls of the structure were secured together without employing bolts, rivets, or similar rigid means.

The fact is that it had been common, for many years before application for this patent was made, to build up both single-wall and double-wall metallic structures by forming interlocking flanges on adjacent walls adapted to engage with each other, and thus securing the parts snugly together without bolts, screws, rivets, or other extraneous fastening, so that they could be readily put together or taken apart without the use of extrinsic fastening elements, and when united would form a substantially unitary, self-sustaining structure. During the 10 years preceding the application for this patent, sheet metal had come rapidly into use as a substitute for wood in building a great variety of office furniture, and interlocking flanges were generally used to unite sheet metal walls of such structures, sometimes with and sometimes without additional fastenings.

It appears that prior to Wege, the plaintiff's assignor, such structures had been made with a preliminary frame of sheet metal bent to form a plurality of its walls, and having united thereto additional walls (including the inner and outer walls, as well as adjacent walls) by flanges on such walls interlocking into flanges upon the frame or shell. In other cases no preliminary frame or shell was provided, and the structure was built up by making each wall separately, providing it with suitable flanges which were interlocked with flanges on adjacent walls as its walls were successively brought together. Flanges of greater or less complexity and of a great variety of outlines were used for this purpose, according to the convenience or fancy of the artisan. Such structures had been extensively made with one or more of the interior flanged walls serving to lock adjacent walls in the encompassing frame, and such locking walls had been further locked in place.

The alleged invention of the patent in suit consists in forming a "metallic structure" by bending or upsetting a sheet of metal in a "frame" corresponding to the several dimensions of the proposed structure, and constituting a portion of the outer walls thereof, providing this "frame" with flanges and mounting additional walls on this "frame" by means of interlocking flanges engaging with those of the "frame." An interior wall abuts against adjacent walls, and is itself locked in place by projecting edges on adjacent walls, behind which it is forced, designated in the specification as "a means for locking such wall member in position in the structure."

The object, as stated in the patent, is to dispense with bolts, rivets, or screws, while making a rigid structure which can be put together,

or taken apart, without inserting or removing such extraneous fastening agents.

The evidence, however, shows to our satisfaction that at the time Wege claims to have made his invention there was no novelty in using interlocking flanges as a means of connecting together the several walls of a "metallic structure" of the same general character, and composed of the same materials, described in the patent; or in using in connection therewith an inner locking wall to lock in place other inner walls placed at right angles to such locking wall; or in locking such locking wall in place; or in substituting such means of locking together such walls for bolts, rivets, screws, or similar appliances. This method of constructing sheet metal structures (including sheet metal filing cabinets) considerably antedated Wege's alleged invention.

The evidence shows that some of the prior structures had the sheet metal walls so locked together by their interlocking flanges, and subsequently inserted flanged walls, sprung in place, as to dispense altogether with the use of "bolts, screws, rivets, or other similar appliances"; while others had used interlocking' flanges for this purpose and supplemented them with screws, bolts, or rivets. Such flange connections had been used where for any reason it was desirable to dispense with rivets, screws, or other extraneous means of attachment, and where it was the purpose to have the structure easily put together and taken apart, without occasion for inserting or removing screws, rivets, or bolts.

In building up rectangular structures of sheet metal, the flexibility of such metal had before been depended upon to enable the flanged walls to snugly engage with each other and be held under tension; this flexibility affording sufficient yield to permit the flanged parts to be sprung into engagement with each other, and be there held by positive frictional engagement, and to compensate for slight variations in the dimensions of the sheet metal walls and of the frame to which these walls are attached.

As the counsel for the defendant pointed out in their brief, and as the evidence in the record makes clear, if the structure of the patent in suit can be distinguished in any details from prior metallic structures of the same material before in general use and prior to the White structure, it is in the fact that the initial element of the patented structure consists of the continuous solid frame of sheet metal, first bent or upset to form integrally "the upper and lower outer walls and the outer side wall of the section," and within the "frame" so constituted the outer flanged rear wall is inserted and there held by the several inner walls, which are successively attached by flanged engagement, so that the walls constituting the "frame" do not have to be secured to each other by bolts or rivets, and have a residual tension imparted by their continuity, while the whole structure is put together or taken apart without the insertion or removal of bolts, screws, rivets, or any device other than the constituent walls secured to the frame by their engaging flanges. And this distinguishing detail cannot be claimed as the invention of Wege, for he is anticipated in this respect by White, his former employer.

There is evidence in the record that the White structure was manufactured by the General Fireproofing Company of Youngstown, Ohio, prior to the filing of the White application and before the earliest date asserted for the Wege invention. White was vice president of the company, and at that time Wege was superintendent of the factory. Wege left the company on October 1, 1909, and claims to have first conceived his invention on or about October 23d of that year. He went into the employ of the plaintiff on October 9th, and some months later, and while White's application was pending in the Patent Office, filed his application for the patent here in suit, assigning it to his new employer, the plaintiff herein.

The issuance of the patent in suit appears to have been due to an inadvertence in the Patent Office. The application for it was filed on May 14, 1910. But on November 13, 1909, an application was filed, serial number 527,755 by Alexander P. White, for a patent for an improvement in metallic structures. The White application was on file in the Patent Office more than six months before the application of Wege for the patent in suit was filed. After the issuance of the patent a hearing was had before the examiner of interferences and he awarded priority of invention to White. An appeal was taken to the examiner in chief, who recommended that the interference be dissolved, on the ground that the counts did not accurately define White's structure. The Commissioner, on appeal, declined to follow the recommendation to dissolve the interference, and referred the case back to the examiners in chief. A majority of the examiners in chief then awarded priority to White, one member dissenting. On appeal from that decision to the Commissioner, he held that White was entitled to make claims 1 and 2, and entitled to priority thereon, but denied his right to the others. An appeal was taken to the Court of Appeals of the District of Columbia and that court, in a unanimous opinion filed on March 6, 1916, sustained White's right of priority upon all the claims, reversing the commissioner in so far as he had awarded priority only on claims 1 and 2. White v. Wege, 44 App. Cas. D. C. 495. White's priority on all the claims now in suit having been thus established, a patent was issued to White, No. 1,180,810, on April 25, 1916.

In the argument before us counsel for the appellant asserted that it was a bold and radical concept on the part of Wege to picture in the imagination a structure demanding the exacting requirements of a fireproof safe, wherein the parts thereof were held together without employing bolts, rivets, or other rigid attaching means between the outer and inner walls of the safe. But as White was having the structure of his patent manufactured in the factory at Youngstown, Ohio, in January or February, 1908, and shipped to New York, where it was placed in a public salesroom in the early part of that year, the "radical concept" of Wege did not occur to him soon enough to enable him to maintain his claim to patentable novelty. The White structure had the continuous outer frame of sheet metal, constituting a plurality of outer walls, with flanges interlocking with the flanges of the inner walls, forming quite as complete an interlock as that illustrated in the

patent in suit. The inner walls have flanges similar to those in the inner walls of the patent in suit and the rear inner wall serves to lock in place by frictional contact the adjacent inner walls, and is itself locked in place by flanges in the adjacent walls, behind which it is sprung. It is composed entirely of sheet metal parts firmly held together under tension by the interlocking flanges without other means of fastening, and the walls are adapted to be inserted, removed, and replaced without mutilation and without taking the frame apart. It was without bolts and without rivets. The testimony shows that:

"The characteristic and distinctive features of the device lay in the manner in which the different parts were locked in engagement by interfitting flanges. The back portion was in a form resembling a pan; that is to say, the edges of the four sides were turned to make flanges. The edges of the sides were also flanged, and into these flanges of the edges the flanges of the back portion interfitted. Then in the back there was a supplemental pan-shaped form, also having flanges on the edges, which also fitted into the flanges on the sides. In speaking of sides thus far I refer to the exterior wall members. There were also interior walls on the sides, and each of these interior side wall members consisted of two parts, each part being of the familiar pan shape. The line of division between the two pans was vertical; one of these two pans, comprising each interior side wall, was inserted so as to engage and hold in place the backs against the flanges on the exterior side walls. The second pan, completing the interior wall, was forced behind the flange on the front edge of the exterior wall. The purpose of making the interior wall in this particular instance of two parts was to adapt the parts to be sprung into position, so that they would hold the wall members—that is, the outer wall members—in place by frictional contact. This splitting of the interior wall member in two parts was not at all essential, as the interior wall could be slipped into position from the perpendicular position or from the top of the device. This method of assembling would involve, however, or as practiced did involve, the bending back of the flange on the top of the exterior wall. To obviate that, the interior wall was formed in two pieces as described. It follows, from the manner in which this structure was put together, that it possessed the peculiarity of having no bolts or rivets."

[2] The usual principle that the patent is prima facie valid, and that the burden is on defendant to establish invalidity, is inapplicable to this case, in view of the admission of the Patent Office that the patent was granted inadvertently and that the invention claimed did not belong to Wege, on whose patent the suit is founded, but to the prior applicant, White, in respect to every claim here sued upon. And we concur fully with the court below in its opinion that Wege was never entitled to the claims that were inadvertently given him. White's priority over Wege in putting the interlocked or articulated metal sheets into a boxlike frame is established beyond question.

Prior in time to White is the Van Wie patent, No. 843,643, applied for on January 16, 1906, and issued on February 12, 1907. The object of the patent "is to produce a stove which can be quickly assembled, and in which the whole interior may be easily removed and replaced, without the use of bolts or rivets." The evidence shows that the Detroit Stove Works built and sold that structure continuously since and including January, 1907, selling about 40,000 annually. It is not important that the Van Wie "metallic structure" was for a stove and that of Wege for another purpose.

The claims of the Van Wie patent include the "frame" and the interlocking flanges, as well as the wall members, in the combination, and many of them would literally cover the structure of the patent in suit, except that they are limited to the use of this combination "in a stove"; whereas, the patent in suit includes the combination broadly, whether used in a stove or any other metallic structure.

Every claim in suit can be read literally upon the metallic structure of Van Wie. After describing the flanged inner walls, which correspond in shape and material with the flanged inner walls of the patent in suit, and the locking wall, which also corresponds in its flanges to the patent in suit, but made in two sections to facilitate its introduction, the Van Wie specification says:

"With this construction all parts are held firmly in spite of any amount of expansion and contraction due to extreme temperatures, for the reason that the spring of metal will yield to all strains."

In the Van Wie patent the double-walled structure of sheet metal serves the purpose of preventing the transmission of dangerous heat, precisely as it would if used in the walls of a fire proof safe. In each case the purpose and effect is to intercept the transmission of heat.

Also prior in time to Wege is the Dick patent, No. 809,497, applied for on February 7, 1905, and issued on January 9, 1906. That was granted for "new and useful improvements in fire-resisting cabinets." The specification discloses a double-walled sheet metal cabinet of the general shape and outline of that in which it now claims to employ the invention of the patent in suit. It describes "paneling of the metal" as employed to give rigidity to the structure, and uses interlocking flanges to join the sheet metal parts together, but reinforces these joints by the use of screws and rivets. It is indistinguishable in function and in general appearance from the patent in suit.

The Van Wie patent and the earlier Dick patent alone made it impossible, as the District Judge pointed out, for invention to reside in fitting sheet metal inside a frame in such wise that it could be attached and removed without tools, and when in place provide an air chamber between frame and lining sheets.

In the Boynton patent, No. 337,127, issued in 1896, we have an instance of a sheet metal structure where the inserted wall members are held in the outer structure or frame without the use of screws or similar appliances and merely by the co-operation of interlocking flanges.

The Senge patent, No. 972,476, issued in 1910, discloses very much the same general interlocking system of wall members as the patent in suit. It discloses a double-walled structure of sheet metal, and it discloses the serial method of putting the structure together. It discloses interlocking flanges, and discloses fully the scheme of one wall member holding a predecessor wall member in place, and a final locking device which keys up the whole structure.

An attempt was made to distinguish the flanges of the prior art by calling them "interfitting" flanges, as distinguished from the "interlocking" flanges of the patent in suit. This was explained by saying that "interfitting" flanges would be flanges made to fit, yet not to lock,

while "interlocking" would necessarily be fitting two parts, so that they would not come or pull apart. But the testimony shows that long prior to the patent in suit it was customary to form metallic structures with interlocking flanges.

As this court is satisfied that the patent in suit is invalid as respects the claims now before the court, it is unnecessary to consider the question of defendant's infringement.

Decree affirmed.