## SAFE CABINET CO. v. GLOBE–WERNICKE CO.
### No. 4755.

Circuit Court of Appeals, Seventh Circuit.
Jan. 12, 1933.

Rehearing Denied April 6, 1933.

George I. Haight and M. K. Hobbs, both of Chicago, Ill., and John R. Hazel, Barton A. Bean, Jr., and Richard W. Treverton, all of Buffalo, N. Y., for appellant.

Wallace R. Lane and Ralph M. Snyder, both of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and JOHNSON, District Judge.

SPARKS, Circuit Judge.

This is an appeal from a final decree entered September 22, 1931, which awarded to appellee $97,030.86, with interest, accountant fees, and costs, on account of appellant's infringement of White patent, No. 1,180,810, issued April 25, 1916, and on that date assigned to appellee.

The bill of complaint out of which this controversy arises was filed June 30, 1916, and charged appellant with manufacturing, selling, and putting into use metallic structures embodying the invention covered by claims 2, 5, 11, 12, and 15 of the White patent. That invention relates to metallic boxes, drawers, cases, cabinets, and the like, and particularly to metallic structures of that variety which are assembled and fastened together without the use of rivets or slots.

It was alleged in the bill that appellant was manufacturing, selling, and putting to use its products under and by virtue of the Wege patent, which had formerly and inadvertently been issued to appellant as assignee of Wege on August 8, 1911, and over which appellee had been awarded priority in an interference proceeding by the Patent Office, and by the United States Circuit Court of Appeals for the District of Columbia, to which said interference was appealed. The prayer was for injunction, accounting, and judgment for profits, damages, and costs.

On July 26, 1916, appellant filed its answer to the bill in which it alleged, among other things, that it "admits, and avers, that, as assignee of the Wege patent, it began to manufacture fire-proof safe cabinets under the claims of said Wege patent, * * * and has built up an extensive and lucrative business thereunder, having sold hundreds of thousands of dollars' worth of safe cabinets made in accordance with the invention forming the subject of said Wege patent; defendant denies that any of the safe cabinets, thus manufactured and sold by it, embodied the invention alleged to be secured to plaintiff under the White patent * * * that, if it were enjoined from marketing its safe cabinet, which it has manufactured for years and which has become so extensively and favorably known to the public, the rights and advantages of the latter, as well as those of defendant, would be greatly hampered and seriously jeopardized, if not to a great extent destroyed * * *."

On August 1, 1921, an interlocutory decree was entered after hearing, and it was therein found and adjudged that the White patent is valid and is entitled to priority of right over the patent granted the Safe Cabinet Company, as assignee of Wege, August 8, 1911, No. 999,929. It was further decreed: "That defendant has infringed said patent, and particularly the claims selected by plaintiff as those under which the charge of infringement was made, claims 2, 5, 11, 12 and 15, by the manufacture and sale, in this District and elsewhere in the United States, of

cabinets embodying the said invention; and that plaintiff is entitled to an accounting of profits and damages accruing by reason thereof. * * * That this cause be referred to * * * master in chancery of this Court, to ascertain, state and report to the Court, the gains and profits derived by defendant from the manufacture, use and sale of cabinets or other devices embodying the invention or inventions embraced in said claims found to be infringed and the damages which the plaintiff has sustained thereby * * * ." From the interlocutory order appellant appealed to this court and the decree was affirmed. That opinion is found in 293 F. 568, and is made a part of this opinion by reference.

The controversy here presented arises out of the master's construction of the District Court's decree, including the order of reference to the master, and also the master's construction of the character of the invention and the infringing devices.

The accounting period is uncontroverted and extends from April 25, 1916, the date of the patent, to November 24, 1923, which is the date of the permanent injunction. Within this period of time appellant manufactured and sold two structures which constitute the basis of this controversy. One was called "Phœnix Safe," and the other "Safe Cabinet," specifically termed and known as the "S-Cientest Cabinet." All of appellant's products, except the "Phœnix Safe," were and are called "Safe Cabinets."

The master found and reported that the S-Cientest safe cabinets did not come within the terms of the decree and should not be included in the accounting, and that the only structure to be considered in the accounting was the Phœnix Safe. He therefore rendered an account of appellant's profits on that structure and found there should be nominal damages only, because of the fact that the patent was not a unitary structure but merely an improvement of an old structure. For that reason he held that the burden was upon appellee to prove the profits on the improvement separately from the profits on the entire structure; and, having failed in that respect, it was entitled to nominal damages only. He further found that appellee was not entitled to compensation for the services of its accountants, and that appellant was entitled to credit for federal taxes which it had paid.

Appellee filed exceptions to the master's report and, upon hearing, the District Court made special findings of fact and conclusions

of law[1] allowing and sustaining exceptions numbered 1 to 10 and 13 to 18, inclusive, and 20. The court found that all safe cab-

[1] "The Court finds the following facts:

"(1) That the decree entered herein August 1, 1921, affirmed by the Court of Appeals of this Circuit, 293 Fed. 568, held the White patent No. 1,180,-810, issued April 25, 1916, valid and claims 2, 5, 11, 12 and 15 thereof infringed by the defendant, and directed an injunction restraining the defendant 'from manufacturing, using or selling the infringing Cabinets or any similar thereto or embodying the invention of said Letters Patent or offering the same for sale or in any respect infringing said Letters Patent,' and referred the cause to a Master 'to ascertain, state and report the gains and profits, derived by said defendant from the manufacture, use and sale of Cabinets or other devices embodying the invention or inventions embraced in said claims found to be infringed and the damages which the plaintiff has sustained thereby.'

"(2) That the defendant's infringing structures included within the decree and order of reference are referred to in the pleadings and evidence as Safe Cabinets and Phoenix Safes, made, marked and sold by the defendant under the Wege patent No. 999,929, issued August 8, 1911.

"(3) That the defendant's infringing Safe Cabinets are represented in evidence by 'Plaintiff's Exhibit Safe Cabinet Co. Cabinet No. 3, Curran, 1,' and the drawing thereof Plaintiff's Accounting Exhibit 5, and further extensively illustrated in

"(1) Plaintiff's Exhibit Safe Cabinet Co. book and card obtained by Peck on May 16, 1916,

"(2) Plaintiff's Exhibit circular No. 1 entitled 'Ammunition' and Plaintiff's Exhibit Circular No. 2 entitled 'Written in Letters of Fire,' stipulated to have been issued by the defendant.

"(3) Plaintiff's Exhibit Safe Cabinet Co. circular of 1914, No. 1.

"(4) Plaintiff's Exhibit Safe Cabinet Co. book of 1915, No. 2.

"(5) Plaintiff's Exhibit Safe Cabinet Co. book of 1912, No. 3.

"(6) Plaintiff's Exhibit Safe Cabinet Co. book of 1913, No. 4.

"(7) Plaintiff's Exhibit Safe Cabinet Co. circular 9/12/12.

"(8) Plaintiff's Exhibit Safe Cabinet Co. Announcement to the Trade of July 28, 1915, No. 6.

"(9) Plaintiff's Exhibit Safe Cabinet Co. circular of 1912 to 1916, inclusive, No. 7.

"(10) Defendant's Exhibit 12, S-Cientest Model Safe Cabinet.

"(4) That defendant's infringing Phoenix Safes are represented in evidence by 'Plaintiff's Exhibit, Defendant's Infringing Phoenix Safe' and are illustrated in the drawing 'Plaintiff's Exhibit Defendant's Infringing Phoenix Safe (made under Wege patent No. 999,929).'

"(5) That, as all of the said Phoenix Safes and Safe Cabinets are embraced in the claims 2, 5, 11, 12 and 15 of the White patent, held valid and infringed, and included in the decree and order of reference, plaintiff is entitled to recovery of all profits derived by the defendant from the manufacture, use and sale of the complete unitary structures embodied in each.

"(6) That the gains and profits realized by the defendant from its manufacture, use and sale of the infringing Phoenix safes, as found by the Master and conceded to be correct by both parties, to which plaintiff is entitled amounts to Forty-Four Thousand One Hundred Fifty-Eight Dollars and Ninety-Seven Cents ($44,158.97).

"(7) That the gains and profits realized by the defendant from its manufacture, use and sale of the infringing Safe Cabinets, reported by plaintiff's accountants and not disputed by defendant, to which plaintiff is entitled, amounts to Fifty-Two Thousand Eight Hundred Seventy-One Dollars and Eighty-Nine Cents ($52,871.89).

incts and safes made, sold, or used by appellant during the time covered by the accounting were made, marked, and sold by appellant under the Wege patent and embodied the inventions embraced in claims 2, 5, 11, 12, and 15 of the White patent, and that the interlocutory decree had so considered and adjudged.

The court further found that the White patent covers a unitary structure and that appellee is entitled to all profits derived by appellant from the manufacture and sale of the complete unitary Safe Cabinets and Phœnix Safes, and that no apportionment of parts should be made. It was further found that appellee was entitled to recover its costs and expenses, and that appellant was not entitled to credit for its federal income taxes.

On March 10, 1932, the parties stipulated as to matters on this appeal.[2]

---

"(8) That the total gains and profits derived by the defendant from its manufacture, use and sale of said Phœnix Safes and Safe Cabinets, during the infringing period from April 25, 1916, to November 24, 1923, to which plaintiff is entitled under the decree herein, amounts to Ninety-Seven Thousand Thirty Dollars and Eighty-Six Cents ($97,030.86).

"(9) That as the defendant's accounts, rendered pursuant to the order of the Master, were incomplete, inaccurate and false, and as defendant failed and refused to file a complete and accurate account in compliance with the decree and order of reference, plaintiff was compelled to employ accountants of its own in order to secure and file a complete and accurate account thereof, plaintiff is entitled to be reimbursed by defendant for plaintiff's reasonable and necessary expense in making and rendering available to the Court its various accounts filed herein, in order to enable an approximately accurate determination of the profits to which plaintiff is entitled under the decree and order of reference, which expense is found to be Thirteen Thousand Five Hundred Eighty Dollars and Ninety-Six Cents ($13,580.96).

"(10) That defendant's infringement was willful, deliberate and persistent, and defendant failed either to keep or preserve such books and records of its infringing transactions, even after notice of infringement or even after this suit was filed, as to enable it to render an accurate accounting of profits, and which required plaintiff to employ accountants, at great expense, to make from such records as were available as accurate a report of profits as could be made.

"(11) That plaintiff's exceptions to the Master's report, numbered 1 to 10 and 13 to 18, inclusive, and 20 are well founded and supported by the record.

"The Court concludes, as a matter of law:

"(1) That the White patent in suit, owned by plaintiff, especially claims 2, 5, 11, 12, and 15 thereof, found valid and infringed by the decree of this Court and by the Court of Appeals of this Circuit, cover a unitary structure and that plaintiff is entitled to all the profits derived by the defendant from the manufacture and sale of the complete unitary Safe Cabinets and Phoenix Safes embraced in the said claims of the White patent held valid and infringed by the decree and ordered to be accounted for. That no apportionment of the various parts of either is required or should be made.

"(2) That because of defendant's willful, deliberate and persistent infringement and its failure to keep or preserve proper books and records for the ascertainment of profits and damages, even after notice of infringement and the bringing of this suit, and its failure, neglect and refusal to render a proper accounting of the profits made from its infringement after the entry of the decree and order of the Master, Federal income taxes should not be deducted in ascertaining the profits due the plaintiff for defendant's infringement.

"(3) That in view of the willful and deliberate infringement, the failure to keep proper records and render a complete and accurate account, the plaintiff is entitled to interest from the end of the infringing period,—to-wit, November 24, 1923, at the rate of six per cent. per annum.

"(4) That the defendant should pay all the taxable costs herein, including the Master's and the va-

rious reporters' fees; that plaintiff should have and recover all its costs and all amounts paid the Master and reporters, amounting to Three Thousand Five Hundred Ninety-Five Dollars and no cents ($3,595.00).

"(5) That plaintiff's exceptions Nos. 1 to 10 and 13 to 18, inclusive, and 20, should be and are hereby allowed and sustained. Plaintiff's exceptions 12 and 19 were not urged and plaintiff's exception 11 is overruled.

"(6) That plaintiff is not entitled to profits realized by the defendant on the interior equipment made, used and sold for use in and as part of the infringing cabinets."

[2] "It is hereby Stipulated and Agreed by and between the parties hereto that Paragraph XI of the Assignment of Errors, filed by appellant on November 28, 1932, which recites—

" 'That the Court erred in finding that defendant wilfully, deliberately, and persistently infringed; that it failed to keep and preserve proper records; that it failed to render a proper accounting; and that for these reasons, Federal income taxes should not be deducted in ascertaining the profits,' may and shall be withdrawn, and that the defendant will not rely on it or ask to have it considered by the Court on this appeal.

"Defendant-appellant admits for the purpose of this case—

"(a) That the sum of $44,158.97, found by the Master and by the District Court to be the amount of gains and profits realized by the defendant from its manufacture, use and sale of the infringing Phoenix Safes, is correct;

"(b) That the sum of $52,871.89, found by the District Court to be the amount of gains and profits realized by the defendant from its manufacture, sale and use of Safe Cabinets (S-Cientest Model represented by 'Plaintiff's Exhibit Safe Cabinet Co. book and card obtained by Peck on May 16, 1916'), is correct;

"(c) That the plaintiff is entitled to recover interest at the rate of six per cent per annum from date of November 24, 1923, to the date of payment on said gains and profits to the extent that the same may be affirmed by the Court of Appeals;

"(d) That the sum of $13,580.96, found by the District Court to be the expenses incurred by plaintiff to accountants for the preparation of full, complete, adequate and accurate accounts, is correct;

"(e) That the various accounts filed by plaintiff, the expense of which was fixed by the District Court at $13,580.96, were necessary to a determination of the sums held by the trial court to be the profits and gains realized by defendant from its infringement, and that the plaintiff is entitled to be reimbursed by defendant for such sum, if the decree of the trial court is affirmed, and if modified, the portion of accountants' fees for which plaintiff shall be reimbursed shall be prorated to the amount awarded by the Court of Appeals.

"It is Further Agreed that the proposed short form narrative heretofore prepared by counsel for defendant-appellant, may be used and that to this may be added by plaintiff-appellee such additional portions as it desires relating to the subjects of necessity for apportionment as contended for by defendant, and Safe Cabinet (S-Cientest Model) infringement, plaintiff-appellee to furnish defendant-appellant in nar-

It is contended by appellant that the S-Cientest Safe Cabinet is not an infringement of the patent, and was not so designated by the interlocutory decree nor included in its terms, nor was it before that court for consideration. From these premises appellant argues that it was the duty of the master under the decree to hear evidence only as to profits made on the Phœnix Safes. The master, however, proceeded under the theory that it was his duty under the decree to hear evidence and determine whether the S-Cientest Safe Cabinet was an infringement of the claims of the White patent hereinbefore referred to, and his finding in that respect was adverse to appellee.

If the S-Cientest structure can be considered as coming within the allegations of the bill, and if in fact it was considered by the court and declared in the interlocutory decree, even in general terms, to be an infringement of the White patent, then, of course, appellant is precluded from raising the question of infringement here, and the master should have treated the S-Cientest Safe Cabinet as an infringement by virtue of the decree.

A perusal of the record in this cause, and also that of the appeal from the interlocutory decree, convinces us that the S-Cientest structure comes well within the allegations of the bill; and that the trial court so considered it, heard evidence bearing on it, and intended to and did in its interlocutory decree adjudge it to be an infringement.

It is true that the word "S-Cientest" does not appear in the bill or the interlocutory decree, but neither do the words "Phœnix Safe." It is admitted in the answer that dur-

ing the period covered by the accounting appellant's safe cabinets were made, marked, and sold under the Wege patent; and it is worthy of note that during the trial it was insisted by appellant that the bill did not present any issue as to the Phœnix Safes because they were not sufficiently mentioned and were not appellant's product, but were manufactured and sold by Phœnix Safe Company, a separate organization. It developed upon cross-examination,. however, that Phœnix Safe Company neither manufactured nor sold anything, and was formed by appellant only for the purpose of giving a trade name to the Phœnix Safe, which was a much cheaper structure than appellant's Safe Cabinets, and to prevent the public from knowing that appellant had anything to do with its manufacture. If was further developed that the Phœnix Safes were manufactured by appellant in the same factory in which their "Safe Cabinets" were made, and by the same workmen, and that all books of account relative to the "Phœnix Safe" were made and kept by appellant in its offices. It was thereafter admitted by appellant that its "Phœnix Safe" was made by it under the Wege patent, and that it infringed the claims of the White patent upon which appellee herein relies.

Appellant now contends that the bill contemplates nothing but the "Phœnix Safe" and does not cover the Safe Cabinets. This argument is versatile but not persuasive. We think the allegations of the bill cover every Safe Cabinet structure made by appellant during the time covered by the accounting, as well as the "Phœnix Safes." The issue of infringement as to S-Cientest Safe Cabinet was therefore in issue at the first hearing. That it infringes the White patent is amply supported by the pleadings and the following exhibits which were in evidence at the first hearing: The Wege patent drawings and specifications; defendant's catalogue; "Book and Card Obtained by Peck on May 16, 1916"; Safe Cabinet Company Book of 1915, No. 2; Safe Cabinet Company announcement to the trade of July 28, 1915, No. 6; Circular No. 1, entitled "Ammunition" (1917); and Circular No. 2, entitled "Written in Letters of Fire" (1917).

It is true that there was no physical exhibit of the S-Cientest Safe Cabinet before Judge Carpenter when he entered the interlocutory decree, but the record before him disclosed appellant's admission that all of their safe cabinets, which must have included the S-Cientest, were made, marked, and sold under the Wege patent, and had been

---

rative form such portions of the accounting record as plaintiff-appellee desires to have added and that when the narrative statement has been thus completed, it shall be treated as the narrative portion of the record on appeal, and the cost of printing thereof shall be advanced by appellant in the usual way for the appeal record.

"In consideration of the foregoing withdrawal of number XI of the Assignment of Errors and the admissions herein set forth, and the preparation of the narrative portion of the appeal record, plaintiff agrees with defendant that the record on this appeal shall include the matter called for in the stipulated praecipe of even date herewith, subject, however, to the right of either party to treat any document, papers, or exhibits in the present and preceding litigation between the parties as physical exhibits, and produce and use them in the Court of Appeals with the same effect and force as if certified by the Clerk of the District Court, and defendant-appellant shall file as physical exhibits three copies of the printed transcript of record on appeal to the Circuit Court of Appeals, filed January 28, 1922, and the three typewritten volumes of accounting proceedings and testimony which shall constitute a part of the record on this appeal, subject to the approval of the District Court and the Court of Appeals."

thus made, marked, and sold since August 8, 1911. He further knew that the White patent and the Wege patent covered identical structures; that in an interference proceeding between them the Patent Office had awarded priority to White, and that ruling had been affirmed by the Court of Appeals of the District of Columbia on March 6, 1916; and that on March 13, 1918, the Circuit Court of Appeals in the Second Circuit held that Wege's claims 1, 2, 5, 6, 8, 9, 11, 12, and 13 were anticipated by White, and that they were invalid, and that White had priority over Wege. Safe-Cabinet Co. v. Globe-Wernicke Co. (C. C. A.) 242 F. 497.

In view of these facts we are convinced that the interlocutory decree, though in general terms, brands the Phœnix Safes and S-Cientest Safe Cabinets as infringing structures as certainly as if specifically designated by name.

If we assume that the master's interpretation of the interlocutory decree is correct, and that it was his duty to determine whether the S-Cientest Cabinet was an infringing structure, those assumptions will be of no avail to appellant, for whatever evidence, if any, may have been lacking at the first hearing, that deficiency was amply supplied at the master's hearing; and while the master found adversely to appellee, the District Court sustained exceptions to that finding and found for appellee. The report of the master in a reference without consent is advisory only, and the trial court was justified in overruling the master. William Wrigley, Jr., Co. v. L. P. Larson, Jr., Co. (D. C.) 5 F. (2d) 731; Larson, Jr., Co. v. William Wrigley, Jr., Co. (C. C. A.) 20 F.(2d) 830; Hapgood v. Berry (C. C. A.) 157 F. 807.

A consideration of all the evidence before the master leaves no doubt of the fact that Phœnix Safe and S-Cientest Safe Cabinet respond to and infringe claims of the White patent. The Phœnix Safe is admittedly an infringement, and the only differences in the construction of it and S-Cientest relate to (1) insulation, (2) the use of screws and bolts in the S-Cientest to additionally hold the interlocking parts of the structure in position, and (3) flanges by which the inner walls are interlocked with flanges on the frame. Those facts were considered by the District Court as not sufficient to distinguish one infringing structure from the other, and we think the ruling was proper.

It is contended by appellant that the White patent is not a unitary structure, but that it merely covers improvements over old structures. Whether such is the case is determinative of the amount of profits to be awarded. If the patent is a unitary structure, appellee is entitled to all profits received by appellant on the infringing devices made and sold by it during the period covered by the accounting; if, on the other hand, it is a mere improvement patent, then appellee is entitled to recover only the profits received by appellant by virtue of the improvement, and in such case the general rule is that the burden is upon patentee to establish the amount by proof, and if he fails to do so he is entitled to nominal damages only.

It is quite obvious that the White patent is drawn broadly to cover a complete metallic structure, and the claims comprise all the elements of a complete safe. The same may be said of the Wege patent which was inadvertently issued to appellant on August 8, 1911, and under which it manufactured and sold Phœnix Safes and its other Safe Cabinets; and under which it continued to manufacture, mark, and sell those structures long after the inadvertency had been corrected and the patent had been issued to White. At the time appellant applied for the Wege patent he referred to it as a distinct entity or unitary structure, and claimed that it embodied a "bold and radical concept."

From the date of issue of the Wege patent to the hearing before the master, so far as we are able to ascertain from both records, it was never intimated by any one that the White or the Wege patent covered other than unitary structures, and we think the evidence conclusively supports the finding of the court that the White patent is a unitary structure and that appellee is entitled to recover the full profits.

The record in this case is voluminous. There is much evidence bearing on the questions we have discussed which we have not referred to in this opinion, because we are convinced, from the nature of the questions raised, further elucidation is neither merited nor warranted.

The discussion of other questions raised in the record and discussed in the brief is rendered unnecessary by the stipulation filed by the parties and hereinbefore set forth.

Decree affirmed.