## AMERICAN SURETY CO. OF NEW YORK v. AMERICAN MILLS CO.

(Circuit Court of Appeals, Second Circuit.  April 13, 1921.)

No. 169.

1. **Principal and surety** ⟨⇒57—Surety bond held procured by fraud.

A transaction between defendant jobber and a debtor corporation, apparently insolvent, by which the debtor contracted to deliver a quantity of bags to defendant for payment, falsely recited as received, and procured complainant surety company to guarantee delivery, whereby, if

⟨⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the bond was enforced, defendant would obtain payment of its debt, *held* fraudulent as to the surety company, and the bond subject to cancellation at its suit.

2. Equity ☜43—Bill does not lie where adequate remedy at law exists.

A bill in equity does not lie in any case where a plain, adequate, and complete remedy may be had at law.

3. Equity ☜53(1)—Objection to jurisdiction because of adequate remedy at law may be waived.

The right to object to the jurisdiction of a federal court of equity on the ground of adequate remedy at law may be waived.

4. Equity ☜53(1)—Objection to jurisdiction waived by counterclaim.

In suit for cancellation of surety bond on ground that it was obtained by fraud, an objection in the answer to the jurisdiction in equity on the ground that complainant had an adequate remedy at law was waived by a counterclaim asking recovery on the bond, defendant insisting upon the counterclaim at the trial and offering proof to sustain it, although defendant moved for dismissal on the ground that equity had no jurisdiction in opposition to a motion for judgment on the pleadings, but did not renew such motion during the trial until the court indicated its determination to decide in favor of the complainant.

5. Courts ☜347—Jury ☜13(6)—Defendant, objecting to jurisdiction, need not plead counterclaim under equity rule.

Under rule 30 of the new Equity Rules (201 Fed. v, 118 C. C. A. v), a defendant in an equity case is not obliged to plead a purely legal cause of action as a counterclaim and offer proof thereof in an action in equity, since any such requirement would be in conflict with Const. U. S. Amend. 7, preserving the right of trial by jury.

6. Jury ☜28(11)—Defendant, asserting cause of action at law by way of counterclaim, elects to proceed without jury.

Where defendant in an equity case asserts a cause of action at law by way of counterclaim, he elects to proceed without a jury.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the American Surety Company of New York against the American Mills Company for an injunction. Decree for plaintiff (262 Fed. 691), and defendant appeals. Affirmed.

Henry Uttal, of New York City (Herbert Haas, of Atlanta, Ga., of counsel), for appellant.

Henry C. Willcox, of New York City (Allan C. Rowe, of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The appellant was a jobber and a dealer in secondhand bags and burlap at Atlanta, Ga. The Hartenfeld Bag Company was in business in Chicago, Ill., as a dealer in secondhand bags and burlap. Its business was collecting secondhand bags, cleaning and repairing them, and reselling them to the bag trade. The appellant had previously, during the course of several years, purchased bags in considerable amounts from the Bag Company. Very frequently the business was conducted as follows: The appellant would secure orders from its customers, and then buy the secondhand bags and burlap necessary to fill such orders from the Bag Company. Payment was

made to the Bag Company in advance as soon as the contract of purchase was made, by giving the appellant's notes, which the Bag Company discounted in Chicago, thus raising the money to finance its transactions. In 1918, owing to the war conditions, there was a shortage of burlap, and the appellant placed orders for large amounts of merchandise with the Bag Company, paying in advance in the manner described. However, when it came to delivery, the Bag Company failed to do so in several instances, and in some cases, where deliveries were made, the customers of the appellant to whom the bags were sent, made complaint both of shortage in quantity and inferiority in quality. In some instances it resulted in rejectment of shipments. The appellant, under contract to deliver the merchandise to its customers, for which it had already paid the Bag Company, was forced to unusual efforts in the summer of 1918 to secure from the Bag Company prompt deliveries of unfilled orders and to make good shortages and substitution of good bags and burlap for those which had been rejected. This resulted in a controversy, with extended correspondence and extensive promises, which apparently were not kept.

On August 29, 1918, while this condition of affairs existed, the Bag Company sold to the appellant a carload of bags and burlap for shipment to Atlanta for $9,225. The appellant did not pay in advance for these goods, but purchased on open account, payable in 90 days. The carload was shipped to Atlanta on August 30, 1918, and on the same day, the Bag Company assigned the 90-day account against the appellant for $9,225, the purchase price of this car, to the Commercial Credit Company of Baltimore. This company makes a business of loaning money on the purchase or discount of accounts receivable. The matter of this assignment was unknown to the appellant until September 24, 1918, following. The unsatisfactory deliveries and replacement of shortages and defective bags continued until September 24, 1918. On that date, the parties met in Chicago, and it was then stated by the president of the Bag Company that he could not make some of the deliveries or replacements to which the appellant was entitled, and it was finally agreed that for such nondeliveries, shortages, and defective deliveries the Bag Company owed the appellant $11,951.41. This adjustment did not take into consideration the open account, which was assigned as aforesaid. The Bag Company was unable to pay the $11,951.41 in cash, and it was finally agreed that the Bag Company should pay the appellant $2,726.41, and give notes for $9,225, making together the $11,951.41 debt, and that the appellant should give to the Bag Company its notes for $9,225 in payment of the car of August 29, 1918, which had been sold under 90 days credit, and which account had been assigned to the Commercial Credit Company. Notwithstanding such assignment, the appellant agreed to give notes for it.

The appellant disclaims knowledge of such assignment to the Commercial Credit Company. When the parties started to draw the notes, it was then recalled that there was another small debt from the Bag Company which had been overlooked. So this indebtedness was deducted from the appellant's notes, and on September 14, 1918, the appellant gave the Bag Company one note for $4,650 due December 18,

1918, and another note for $4,485.08, due January 5, 1919, in payment of the car shipped to Atlanta on August 29, 1918, which had been sold on open account. The Bag Company discounted the appellant's notes with a banking house in Chicago, and received credit therefor. When on September 24, 1918, the appellant was requested to pay by the Commercial Credit Company, it at once communicated with the Bag Company. At this time the Bag Company owed the appellant the $9,-225 in notes and other matters aggregating about $12,000, for which the appellant had no security. The president of the appellant went to Chicago, without acknowledging or answering the demand of the Commercial Credit Company, for the purpose of discussing matters and arriving at a settlement with the Bag Company. The president of the Bag Company stated that the assignment of the account to the Commercial Credit Company was due to an error, and that in his absence a "bonehead" clerk had filled out one of the blank forms and assigned the account without his knowledge to the credit company; but it was apparent that the Bag Company was in bad financial condition and this was made known to the appellant. However, the president of the Bag Company stated that, while he had no ready cash, he had considerable volume of merchandise on hand which would permit him to pay in 60 days.

The following transaction then took place: A contract was drafted, by which it was made to appear that the Bag Company should sell and deliver to the appellant merchandise therein specifically amounting to $22,100, a little more than enough to pay the appellant in full, and provided as follows: "Which the American Mills Company agrees to pay cash upon the conditions that this contract is completed within 75 days after date." It provided that the Bag Company would secure a good surety company bond guaranteeing the performance by the Bag Company. At the time it was very apparent that the president of the appellant did not go to Chicago for any purpose other than to adjust the indebtedness then owing. Nothing indicates a desire to buy other merchandise. No satisfactory explanation is given why another purchase of bags should have been made under the circumstances. Later there was substituted in the contract the following words:

"The amount of this contract is $22,100, paid to H. B. C. [Hartenfeld Bag Company] upon the execution of this agreement, the receipt whereof is hereby acknowledged. In the event that the said H. B. Co. shall not make delivery of the said bags on or before 75 days after the date hereof, said H. B. Co. shall retain of said $22,000 only so much thereof as will pay at the contract rate for such bags, if any, as have been delivered and accepted by A. M. Co. [American Mills Company], and said H. B. Co. shall at the expiration of 75 days immediately return to A. M. Co. the difference between said $22,000 and the price of the bags delivered."

[1] This substituted a contract which called for payment on delivery into one which apparently called for an immediate advance payment and for delivery or a refund of the money. Under this change in the contract, the surety was liable, not only for damages above the contract price for failure to deliver bags, but for actual delivery of the bags or repayment of the whole recited consideration. This

change, made by the attorney for the purchaser, was disadvantageous to the ostensible purchaser, and is some evidence that the contract was not what it appeared to be, but a mere cover for an agreement to deliver merchandise in the future for the payment of debts existing and to be assumed for over $21,000, and was made solely in order to make the surety liable for the payment of the debt, either by delivery of merchandise or cash. No other satisfactory explanation is made why a creditor, which did not want to buy goods and did not go to Chicago therefor, should voluntarily change the apparent contract from one which would not require the creditor to make an advance payment to one which did.

The trial judge concluded that the contract in question was a mere blind or fraud to conceal the real agreement, and that the form in question was adopted to conceal the real transaction under the guise of a sale in good faith with an advance payment. Its purpose was plain. It was intended to induce a surety to execute a bond, and by its bond become liable for the payment of a debt then due and to be assumed from the Bag Company to the appellant. It was clear to the trial judge, as it is to us, that the purpose of the parties was to exchange this unsecured claim, which the appellant had of $12,000, plus the $9,225 indebtedness of the appellant to the Credit Company, by virtue of the assignment of the claim, into a claim of merchandise, or money if the merchandise was not delivered in 75 days, and to secure it by a bond of a surety company. What took place at the time of the execution of this contract, together with the explanations as disclosed by the record, satisfy us of the correctness of this finding in the lower court. The appellee executed this bond. After its execution, the correspondence between the parties and their course of conduct verifies the conclusion that it was a fraud attempted to be perpetrated to secure payment to the appellant.

But the validity of the decree below is attacked upon the ground that the District Court did not have jurisdiction. It appears that, after a default was made by the Bag Company in carrying out this contract, the appellant sued the Surety Company in the Illinois state court on the bond, together with the Bag Company, and served both defendants. A few days later it sued in the state courts in Georgia. Process was served only on the appellee, because it could not be served upon the Bag Company in that state. Before answer in either suit, the appellee brought a suit in the New York Supreme Court, alleging fraud in obtaining the execution and delivery of this bond, and asking for its cancellation and surrender. Because of diversity of citizenship, the appellant moved the case to the District Court of the United States for the Southern District of New York. The appellant thereupon interposed an answer, alleging that equity had no jurisdiction, because it had an adequate remedy at law, maintaining that, in actions at law pending in the courts of the states of Illinois and Georgia, it could defend upon the ground of fraud. The appellant also pleaded a counterclaim upon a cause of action at law, and claimed breaches against the appellee, and asked for judgment for $21,050. This was the same sum as

claimed by the appellant in the suits in Illinois and Georgia. The prayer for relief was as follows:

"Wherefore defendant demands judgment dismissing the complaint, with costs, and for affirmative judgment against the plaintiff on defendant's counterclaim for the sum of $21,050, with interest thereon from the 14th of December, 1918, with costs."

A reply was interposed by the appellee to the material allegations of the counterclaim and separate defenses thereto were interposed. A motion was made for judgment on the pleadings, which was denied without prejudice to renewal at the trial. Another application was made for a final decree on the pleadings, on the ground that the admissions in the appellant's answer entitled the appellee to the relief sought. In opposition to this motion, the appellant moved for a dismissal on the ground that equity had no jurisdiction, because the appellee had an adequate remedy at law. This motion was denied without prejudice. On the trial, at the close of the appellee's case, the appellant called witnesses and endeavored to establish the allegations of the counterclaim. At no time during the trial was the application to dismiss renewed upon the ground that the appellee had an adequate remedy at law. The court thereupon indicated its determination to decide in favor of the appellee and against the appellant on the facts, and stated that the only question which it desired to have argued was on the question of law. Thereupon the appellant urged that there was no equitable jurisdiction, for the reason that the appellee had an adequate remedy at law, and the court ruled that, since the counterclaim was interposed and the appellant asked affirmative relief, it had submitted itself to the jurisdiction of a court of equity, and gave a decree against the appellant.

[2-4] A bill in equity does not lie in any case where a plain, adequate, and complete remedy may be had at law. Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 Sup. Ct. 942, 57 L. Ed. 1288. But the objection to such jurisdiction may be waived. We think equity did not have jurisdiction, but for the waiver of the appellant. Pleading its counterclaim in the answer, and thereafter insisting upon it at the trial, and offering proof to sustain it, constituted a waiver. The equity power having been invoked, the right of the defendant to object because of the existence of a legal remedy can be waived. McGowan v. Parish, 237 U. S. 285, 35 Sup. Ct. 543, 59 L. Ed. 955. The appellee stated and proved its right to equitable relief to prevent being harassed by suits on the bond, which was procured through fraud, and while it had an adequate remedy at law in defending any suit which was attempted to be maintained on the bond, still, appellant having consented by its pleas to remain in the equity court, the jurisdiction to try the case was complete. In McGowan v. Parish, 237 U. S. 285, 35 Sup. Ct. 543, 59 L. Ed. 955, the court said:

"But 'a court of equity ought to do justice completely, and not by halves,' and a cause once properly in a court of equity for any purpose will ordinarily be retained for all purposes, even though the court is thereby called upon to determine legal rights that otherwise would not be within the range of its authority. Camp v. Boyd, 229 U. S. 530, 531."

The rule was stated in Southern Pacific R. R. v. U. S., 200 U. S. 341, 26 Sup. Ct. 296, 50 L. Ed. 507:

"It is undoubtedly true that a suit in equity cannot be maintained when there is a plain, adequate, and complete remedy at law. Such is the mandate of Revised Statutes, § 723, as well as the general rule in equity. Lewis v. Cocks, 23 Wall. 466; Killian v. Ebbinghaus, 110 U. S. 568; Litchfield v. Ballau, 114 U. S. 190; Allen v. Pullman's Palace Car Company, 139 U. S. 658. It is also true that this objection need not always be raised by some pleading, but may be presented on the hearing, even in the appellate court, and if not suggested by counsel, may be enforced by the court on its own motion. See authorities just cited. But, on the other hand, it is equally true that where the objection that the plaintiff has an adequate remedy at law is not made until the hearing, and the subject-matter is of a class over which a court of equity has jurisdiction, the court is not necessarily obliged to entertain it, even though, if taken in limine, it might have been worthy of attention. Wylie v. Coxe, 15 How. 415, 420; Reynes v. Dumont, 130 U. S. 354, 395; Kilborn v. Sunderland, 130 U. S. 505, 514; Brown v. Lake Superior Iron Company, 134 U. S. 530; Insley v. United States, 150 U. S. 512, 515; Perego v. Dodge, 163 U. S. 160, 164; 1 Daniell's Chan. Pl. & Pr. (4th Ed.) p. 555."

At no time did the appellant raise the objection until after it had pleaded its counterclaim, and while a motion to dismiss the bill was made and denied in advance of trial, this was done without any prejudice to a renewal. In place of renewing at the commencement of the trial, the appellant proceeded with the trial, and offered proof of its counterclaim, and asked for judgment. When it observed that judgment on the facts was going against it, then for the first time during the course of the trial it insisted that the appellee had an adequate remedy at law. We think this conduct at the trial was tantamount to invoking the aid of a court of equity to exercise its jurisdiction in this case. Offering proof before the court, without a jury, waived any objection to the jurisdiction of the court in equity to try and dispose of the suit. Merchants' Heat & Light Co. v. Clow & Sons, 204 U. S. 286, 27 Sup. Ct. 285, 51 L. Ed. 488. In that case the court said:

"But by setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action and by invoking submitted to it. * * * There is some difference in decisions as to when a defendant becomes so far an actor as to submit to the jurisdiction, but we are aware of none as to the proposition that when he does become an actor in the proper sense he submits. * * * As we have said, there is no question at the present day that, by an answer·in recoupment, the defendant makes himself an actor, and, to the extent of his claim, a cross-plaintiff in the suit."

[5] But the appellant insists that, because of rule 30 of the new Equity Rules (201 Fed. v, 118 C. C. A. v), he was obliged to plead his counterclaim and offer proof thereof in this action in equity. Rule 30 in part provides:

"The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set out any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim so set up shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross claims."

The courts never intended, nor had they the power, to compel a defendant to plead a purely legal cause of action as a counterclaim to a suit in equity, and rule 30 was never so intended. To do so would be in conflict with the Seventh Amendment of the federal Constitution, which provides:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."

[6] The facts which might constitute a counterclaim can be pleaded in an equity action as a defense or answer by way of cross-suit, and "so as to enable the court to pronounce a final judgment in the same suit, both on the original and cross-bills." What the appellant did here was voluntarily—not compelled by any rule—to assert a cause of action at law by way of the counterclaim. This conduct was an election to proceed without a jury. Robb v. Vos, 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 52; A. Klipstein & Co. v. Grant, 141 Fed. 72, 72 C. C. A. 511. As the cause proceeded, the trial judge had it within his power to dismiss appellee's cause of action (if he concluded it was without merit), and could have retained jurisdiction on the questions presented by the proofs as to the counterclaim, and could have rendered judgment on the merits thereof in favor of the appellant or appellee. The issue as to the counterclaim was presented by the reply to it, and the defenses there interposed. Where a party thus proceeds to trial before the court without objection or exception, he voluntarily waives his right to jury. Kearney v. Case, 79 U. S. (12 Wall.) 275, 20 L. Ed. 395; Perego v. Dodge, 163 U. S. 160, 16 Sup. Ct. 971, 41 L. Ed. 113. We think the court below had jurisdiction under the circumstances, and we agree with the conclusions reached below.

Decree affirmed.