MRS. CHARLES M. BOERMAN, NÉE MARÍA L. FORDHAM, Petitioner, Appellee, and Appellant, *v.* HEIRS OF ESTHER BESSIE BOERMAN, Opponents, Appellants, and Appellees.

No. 7060.   Argued March 2, 1937.—Decided February 4, 1938.

594

.*Mariano Acosta Velarde* and *Federico Acosta Velarde* for appellants.
*E. Ramos Antonini* and *V. Gutiérrez Franqui* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

This is an appeal arising from an incident in the judicial administration of the estate of Charles M. Boerman. Mrs. Charles M. Boerman, née María L. Fordham, was originally named judicial administratrix of her husband estate in 1917. By will, the participants in the bulk of this estate were declared to be the widow and the mother of the testator in equal shares. The will also provided for a legacy to one Amelia Marrero, who subsequently proved herself to be the testator's natural daughter and received her legal share of the estate. See *Marrero* v. *Fordham et al.*, 27 P.R.R. 649; 273 Fed. 71; *Boerman* v. *Marrero*, 34 P.R.R. 120; 27 F. (2nd) 321. As a result of these different suits, the estate was, by 1922, distributed both as to Mrs. Charles M. Boerman and as to Amelia Boerman Marrero. The remaining share, that of the deceased's mother, Mrs. Esther Bessie Boerman, could not be delivered to her because of her absence from the island, her residence being at the time in Russia. The exact proportion of the estate received by each heir can be ascertained from our opinion in the case of *Boerman* v.

*Marrero, supra.* This constitutes more or less the history of the judicial administration up to the year 1922.

The judicial administratrix remained in possession of her mother-in-law's share of the estate. It is not clear whether her original appointment continued in force, but from the various opinions of this Court with regard to several aspects of the case it appears that her active duties as administratrix ended at that time, and that she remained, either de jure or de facto, and certainly de facto, in possession of Bessie Boerman's share for the purpose of delivering that possession over to her or to her duly authorized heirs. Esther Bessie Boerman died testate in Russia and her heirs, after one unsuccessful attempt to obtain possession of her participation in the estate, finally proved their identity and right to the property sometime in 1930, and succeeded in getting possession and an order from the District Court of Ponce requiring María L. Fordham (Mrs. Boerman) to render her final account. It is with regard to this final account and some of its items that the present appeal has been taken.

The appellants in this particular case are, on the one hand, the heirs of Esther Bessie Boerman, and, on the other, Mrs. Charles M. Boerman. Both parties raise objections to some of the findings of the trial court with regard to the above mentioned final account.

■ The heirs have also filed a motion to dismiss the appeal of Mrs. Charles M. Boerman on the ground that the notice of appeal was filed with the lower court more than ten days after the term for appealing had legally commenced. It is contended by the heirs that the order approving the final account is a special order made after final judgment and hence should have been appealed from within ten days, according to the third paragraph of Section 295 of the Code of Civil Procedure (1933 edition). We shall first dispose of this motion to dismiss.

Those who move for the dismissal maintain that the final judgment or decree in the judicial administration came when

the district court, on September 24, 1930, decided that such administration had come to an end; and that when it approved the final account it was merely rendering a special order after final judgment. No cases are cited to support this proposition.

Sections 588, 589 and 590 of the Code of Civil Procedure (1933 ed.) provide:

"Section 588. Whenever the administrator or executor shall have completed his liquidation of the estate, or resigns, or is removed, or for any reason ceases to be such administrator or executor, he shall file with the court a final account sworn to by him and accompanied by proper receipts and vouchers, which shall likewise be open for inspection. On filing such final account all parties interested in the estate shall be cited to the end that they may attend the final settlement of his account and the return of his bond or cancellation thereof.

"Section 589. Eight days after the service of citation to be issued upon the order of the judge of said court, if no objections be filed to such account, if in the opinion of the court the account is just and correct, an order approving the same shall be entered, discharging the administrator from responsibility, and cancelling the bond or other security which he has given. Should objections be filed to the account, the matter shall be brought on for a hearing and proof taken and the account approved or disapproved as the law and facts may justify.

"Section 590. The district court shall make a final order, either approving the account as rendered, or modifying and amending it, and charging the executor or administrator as law may require, and an appeal may be taken from such final order."

From an examination of these three Sections it appears that the filing and approval of a final account constitutes practically a special proceeding in itself. The law has provided for the citation of all parties interested, for a full hearing if necessary and for an appeal from what the statute itself calls a "final order, either approving the account as rendered, or modifying and amending it, and charging the

executor or administrator as law may require...." The order terminating the judicial administration puts an end to the administrator's activities, but it is the order approving the final account that finally relieves him or her of official responsibility.

The only case which we have been able to find in our jurisprudence and which may have some bearing on the subject is that of *Díaz et al.* v. *Cividanes,* 25 P.R.R. 418. In that case the temporary administrator, Genaro Cautiño, had resigned as such and had rendered a final account with the request that it be approved. On December 27, 1915, the district judge issued an order approving such account and suggesting additional compensation. Again on January 31, 1916, the same judge issued another order finally discharging Cautiño of any responsibility in the administration. Almost a year later an interested party moved to set aside the order of approval, supra, and to be given an opportunity to attack the account. The court granted the motion but insisted that Cautiño be cited and given an opportunity to defend and required other minor activities from the opposing party. The latter appealed from such conditional order. In the course of the opinion this Court said: (Italics ours.)

"Conceding that either or both of the orders of dates December 27, 1915, and January 31, 1916, were final, *as seems to have been the intention and understanding of the district court,* certainly an order entered a year later reopening matters apparently closed by such previous action cannot be regarded as in any sense a final judgment, . . ."

We are of the opinion, therefore, that the order appealed from was a final decree in a special proceeding and hence that the appeal was a timely one.

■ Let us now consider the appeal of Mrs. Charles M. Boerman, *née* María L. Fordham. Both because of an insufficient brief and by reason of the opinion of this Court, on a motion to dismiss, of May 8, 1936, the appellant is limited

to the consideration of one of the three errors assigned by her. The assignment reads:

"The district court committed manifest error in partially sustaining the objection of the contestants, thereby charging the sum of $1,260 to the administratrix as rental for the house at Magueyes."

The house in question forms a part of a small farm which was adjudicated to Mrs. Esther Bessie Boerman when the estate was partitioned, and which remained in possession of María L. Fordham from 1922 to 1930. We must determine whether the administratrix should be charged with a reasonable rental for her occupation of the house during this time. When the partition or division of the estate took place, the property denominated "Magueyes" was assessed at $21,000. A tenancy in common was established under the following terms:

| | |
|---|---:|
| Esther Bessie Boerman | $19, 667. 845 |
| Amelia Boerman Marrero | 802. 925 |
| María L. Fordham | 529. 23 |
| Total | $21, 000. 00 |

In other words, the heirs of Esther Bessie Boerman hold a 93.6364 per cent interest in the whole. Their claim should, of course, be limited to their proportional holding.

The appellant argues that her occupation of the house was principally to facilitate her administration of the farm and, therefore, for the exclusive benefit of the heirs of Esther Bessie Boerman. She likewise maintains that no contract of lease was ever entered into by her and hence that no rental can be collected from her. But the appellees do not rely on a contract of lease, but upon a duty on the part of an administratrix to do all that is reasonable to make the property administered productive of a return to its beneficiaries.

The real doubt which we have entertained is whether an administratrix who is in possession of certain premises solely for the purpose of delivering their possession to the rightful

owners, should be charged with a positive duty to make such property productive. We cannot lose sight of the fact that Mrs. Boerman came to Puerto Rico for the object of administering her deceased husband's estate. She was not a mere stranger to the administration, but the widow of the testator. If possible, greater consideration and leniency should be exercised with regard to her actions as such administratrix because of the fact that she may have thought she was entitled to do certain things and enjoy certain privileges, a thing which a strange administrator possibly could not have reasonably supposed. The widow was also a tenant in common, and though small, held a certain freehold interest in the property. In addition to all this, it appears from her uncontradicted testimony in the record that the house had no water facilities and that without success she tried for seven months, sometime after 1915, to rent it. It also seems reasonable to suppose that had she not lived the house and taken care of the surrounding property, a foreman (*mayordomo*) would have been necessary and at a greater expense to the heirs of Bessie Boerman.

Last but not least it must be noted, as the heirs themselves averred in their opposition to other items of her final account, that from 1920 onward she was no longer impressed with any active duties to administer but merely with the obligation to turn the property over to Esther Bessie Boerman or her heirs when they should appear to claim their rightful possession.

Under all these circumstances, we feel that the ends of justice are more equitably fulfilled by relieving María L. Fordham of any charge with regard to her occupation of the house on the Magueyes property during the course of her custody of it for the purpose of turning it over to the rightful heirs of Esther Bessie Boerman. The decision of the lower court in this regard should therefore be reversed.

Let us now consider the appeal of the heirs of Esther Bessie Boerman.

The first of seven errors assigned concerns the concession, by the lower court, of the sum of $4,954.265 as the appellants' share of the attorney's fees and court costs incurred by the administratrix, according to her account, during the years 1923 to 1930. The appellants call our attention to an arithmetical error in the total sum of these attorney's fees.

Inasmuch as we propose to analyze the evidence on the amount of these fees and court costs we shall pass over this alleged error for the moment.

The judgment roll contains a final account, sworn to by Mrs. Charles M. Boerman, of the income and expenditures of the estate of *Charles M. Boerman* for the years 1923–1930, both inclusive. Under the heading "Lawyers Fees and Courts Costs" appear the following figures:

| | |
|---|---:|
| 1923 | $3, 393. 10 |
| 1924 | 528. 82 |
| 1925 | 1, 142. 85 |
| 1926 | 1, 228. 74 |
| 1927 | 1, 674. 27 |
| 1928 | 649. 70 |
| 1929 | 222. 50 |
| 1930 | 200. 00 |
| | $9, 802. 05 |

On the pages following this final account appears a summary of the expenditures and income of the specific properties allotted to Esther Bessie Boerman (which are the properties involved in this case) wherein under the same heading as in the general account, the following figures are presented:

| | Receipts | Expenditures |
|---|---|---|
| 1923–30 | | $4, 954. 26½ |

The transcript of the evidence contains the testimony of the administratrix with regard to these expenditures. The least that can be said about her testimony is that it is not clear and has no citation of actual amounts or clear explanation of the nature of the actual litigation carried on by the

administration from 1922 to 1930. It has been impossible for us to determine with certainty how she spent the $4,954.26 charged to the heirs as their share of the attorney's fees and court costs. In many instances we shall have to accept the expenditures as noted by the orders of the court or receipts of court officers, etc., as proper ones, relying as we must, to a certain extent, on the higher degree of familiarity and knowledge that the trial court had with regard to this whole administration.

The order of the trial court conceding the above amount throws no light upon the situation, inasmuch as the court, after first denying *in toto* the item in question, on reconsideration said:

"The court reconsiders paragraph 6 of the order cited which now should read as follows:

"The court overrules the objection made by the contestants to the charge of $4,954.26½ made by the administratrix as paid for attorney's fees; because the court understands that according to what was set forth by the Supreme Court of Puerto Rico in·the case of *Ex parte Boerman,* 38 P.R.R. 678, to the effect that 'until the time for the delivery of the property to the heirs, the holding of it by the administratrix *is in continuance of her duties as administratrix of the estate of Charles M. Boerman'* and she had a right to the services of an attorney to defend that property until it should be delivered to the heirs."

We are inclined to agree with the lower court that Mrs. Charles M. Boerman had power to contract the services of an attorney at any time between 1922 and 1930, and to charge the corresponding fees and costs to the heirs of Mrs. Esther Bessie Boerman, but only if those services were necessary for the protection of their share of the estate or somehow related to the conservation of that share.

In order to dispose of this question we must, as we have said, analyze the testimony of Mrs. Boerman and the receipts and court orders which appear in the transcript of the evidence.

As appellants point out, Mrs. Boerman only refers to three distinct cases during her declaration with regard to attorney's fees. One is what she calls "the case against the Río Piedras property." We have gathered from all that is before this Court that the Río Piedras property was adjudicated to the appellants' testatrix when the division of the estate of Charles M. Boerman took place. The suit seems to have been for the recovery of certain rent therefrom. She admits this case was filed in 1922, but does not say whether or not she was successful in its prosecution. Although the evidence is not too clear we are inclined to give her the benefit of the doubt with reference to this specific litigation, since it distinctly affected the returns from one of the properties assigned to the appellants. The fact that it may have been instituted in 1922 and thus before the period under consideration is not controlling inasmuch as the actual disbursement of the fees probably took place sometime after 1922.

Another of the suits was one in which the administratrix attacked, in the Federal Court, the judgment of the District Court of Ponce, subsequently affirmed by this Court, in the filiation suit successfully brought by Amelia Marrero. The cost of this litigation, to our mind, should not be even fractionally borne by the appellants who had never questioned the correctness of the filiation proceeding. Furthermore, this suit did not at all concern the properties actually in the hands of the administratrix for delivery to appellants.

The third suit is with regard to a petition by one Calderón for the division of a tenancy in common. We incline to favor the participation of the administratrix in the suit inasmuch as it also involved certain property in which the present appellants had an interest.

The court's orders authorizing payment of fees to various attorneys, are five in number. By the first one, F. Manuel Toro, who was appointed referee sometime in 1920 for the purpose of examining, auditing and reporting on a final

account rendered at that time by the present administratrix at the request of Amelia Boerman Marrero, was allowed $900 on account of his fees as such referee. This order bears date of December 29, 1922. On May 29, 1923, another order authorized the outlay of $1,100 for Mr. Toro in final settlement of his services to the administration, $1,025 to Peter J. Hamilton for services rendered to the administration, and $250 to attorney Herminia Tormes for professional services from January 1, 1923, to May 31, 1923. These two orders justify an expenditure of $3,275.

The next three orders of April 17, 1925, July 30, 1927, and September 12, 1929, allow payment of fees to the firm of Martínez Nadal, Tormes & Colón, to the extent of $1,150, and to attorney Leopoldo Tormes in the amounts $1,350 and $790, or a total of $3,290. Under the partition and distribution of 1920 Mrs. Esther Bessie Boerman was adjudicated one half of the estate of her son. It is our opinion, therefore, that she should be responsible for one half of the fees paid to attorneys or others on behalf of the estate, even though the services were rendered before 1922. Under the circumstances, therefore, the appellants should be charged with one half of the expenses mentioned in the preceding paragraphs which amounts to $3,282.50.

The rest of the documentary evidence is made up of copies of the various receipts, accounts and other vouchers which were attached to the quarterly accounts rendered by the administratrix. Summed up, they amount to $2,873.25. From this total must be deducted approximately $250 which appear clearly to have been disbursed in the case of *Minnie L. Boerman* v. *Amparo Marrero et al.*, Equity Case No. 1227E, in the Federal Court, and the expenses of which we have already decided should not be borne in any part by the appellants. This would leave a remainder of $2,623.25, of which the appellants are responsible for $1,311.63. We are not going to attempt to investigate these individual vouchers but shall accept the lower court's finding.

From our study of the evidence, we feel the appellants should be charged, as their share of attorney's fees and court costs with no more than the sum total of the previous amounts of $3,282.50 and $1,311.63, or $4,594.13. The finding of the lower court should, therefore, be modified and reduced from $4,954.26 to $4,594.13.

■■ The next error assigned by the appellants concerns the expenses incurred in the repair of a house on San Francisco Street, in San Juan. Although the appellants hold a tenancy in common as to the title in fee, the usufruct is enjoyed by the appellee. Sections 425, 428, 429 and 430 of our Civil Code (1930 ed.) provide:

"Section 425. The usufructuary shall care for the property given in usufruct as any good father of a family would do.

.  .  .  .  .  .  .  .  .  .

"Section 428. The usufructuary shall be obliged to make the ordinary repairs necessary on things given in usufruct.

"By ordinary repairs are understood such as are required by the wear and tear produced by the natural use of things and which are indispensable for the preservation of such things. If the usufructuary shall not make them after being requested to do so by the owner, the said owner may make them at the expense of the usufructuary.

"Section 429. Extraordinary repairs shall be made at the expense of the owner. The usufructuary is obliged to notify the owner when the necessity for such repairs is urgent.

"Section 430. If the owner shall make extraordinary repairs, he has the right to demand of the usufructuary the legal interest on the amount invested in such repairs during the continuance of the usufruct.

"If he shall not make them when indispensable for the maintenance of the thing, the usufructuary may make them; but he shall have the right to demand of the owner, at the end of the usufruct, the increase in value which the tenement may have acquired by virtue of such repairs.

"If the owner refuse to pay the value thereof, the usufructuary has the right to retain the thing until he reimburses himself with the products thereof."

The controversy turns upon the nature of the repairs, whether extraordinary or ordinary. We are inclined to accept the finding of the lower court that the repairs arose as a result of the cyclone which swept this island in 1928. Appellants maintain that the lower court relied more upon the extraordinary nature of the cause (the cyclone) than upon the extraordinary nature of the repairs themselves. From reading the Sections cited one gets the impression that the distinction rests upon whether the repairs are "such as are required by the wear and tear produced by the natural use of things." We feel that repairs made necessary by a hurricane do not reasonably fall within the above definition, and hence must be considered extraordinary.

The appellants contend that, according to Section 430 *supra*, interest at the legal rate should be paid by the usufructuary on the amount charged to the owners for the repairs. In this case we are only concerned with the rendition of Mrs. Boerman's final account as administratrix and shall not attempt to determine the rights of the respective parties by virtue of other legal relationships in which they may happen to stand. The appellee's right to charge the expense in question to the appellants, was clear.

██ The third assignment of error concerns the question of insurance on the same house. Under our Civil Code there is no active duty imposed on either owner or usufructuary to insure a building. It may be that in an exceptional case, the duty to insure might fall upon the usufructuary under Section 425 of the Civil Code (1930 ed.) as a necessary requisite for caring for the property given in usufruct as any good father of a family would do. It does not appear that this is such an exceptional case.

We are confronted once more with the dual personality enjoyed by the appellee, since she was both the usufructuary and the representative of the owner of the property. Her interest with regard to the matter at issue was a conflicting one. If she chose to divide the insurance expense with the

owner she still could, under Section 446 (Civil Code, 1930 ed.), enjoy the new building or the interest upon the insurance principal should the house be destroyed. On the other hand, she would have been under a duty to rebuild even if she paid the insurance premiums out of her own pocket. Under the circumstances we think it was her duty to inquire of the owner or owners of the building if they wished to insure with her. However, it was most difficult to get in touch with Mrs. Esther Bessie Boerman, who was in Russia, and the appellee's obligations pursuant to her judicial position as administratrix probably required that she insure the building to protect her principal. Likewise we question whether Mrs. Charles M. Boerman might not be protected under Sections 1789 *et seq.* of the Civil Code (edition of 1911) with respect to the management of the affairs of others. Not without some doubt we are inclined to accept the finding of the lower court to the effect that the expense of insuring should be equally distributed between the parties.

By the fourth error the appellants attack the finding of the lower court with regard to the rents produced by a certain property at Bayola Street, in Santurce. The lower court decided that it had not been proved that appellee had received the rents. It appears from the record that the right to these rents was taken away from the appellee by an order of the District Court of Ponce sometimes in 1922. We are not ready to impute negligence to the administratrix for her obedience to such order and if the appellants have a right to the rents they should sue the person who has illegally enjoyed them.

The next assignment of error concerns the failure to include certain rents, alleged to be received or collected by the administratrix, in her final account. We are satisfied from her own testimony and the appellee's brief that these rents were never received by her for the benefit of the present appellants, and did not concern rents accumulated between the years 1923–1930.

The sixth assignment of error relates to the sufficiency of the rent allowed by the lower court with regard to the property inhabited by the administratrix at Magueyes. This point has been covered by our discussion of Mrs. Boerman's appeal and, therefore, needs no further comment.

■ The last assignment of error claims that the lower court should have granted interest at the legal rate on the balance which, for the benefit of the appellants, was left in the hands of Mrs. Boerman as a result of the rendition of accounts in 1922. The amount involved is $2,533.84. Appellants claim interest for eight years and three months, or $1,406.28. We are not convinced that under the circumstances of this case the appellee should be charged with such interest. The state of the record shows that she spent more money than she actually received from the property administered and we incline to the view that she either used the above amount for expenses or had a right to do so. In any event we shall affirm the findings of the lower court.

For the foregoing reasons, the order of the District Court of Ponce of June 2, 1932, as amended on December 28, 1933, should be reversed in so far as it charged the administratrix with $1,260 for her occupation of the house on the Magueyes property and modified in so far as it allowed the sum of $4,954.26 to be charged to the heirs of Esther Bessie Boerman as their share of the attorney's fees, which amount should be reduced to $4,594.13.

Mr. Chief Justice Del Toro and Mr. Justice Córdova Dávila took no part in the decision of this case.